CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION
FUND, et al., Plaintiffs,

v.

GOGGIN TRUCK LINE, INC.,
a Tennessee Corporation,
Defendant.

No. 90 C 4107.

United States District Court,
N.D. Illinois, E.D.

Dec. 30, 1991.

Albert Madden, Central States, South-
east & Southwest Areas Health, Welfare &

Pension Funds, Rosemont, Ill., for plaintiffs.

Sandra J. Tyra, Keck, Mahin & Cate, Chicago, Ill.

Charles Hampton White Cornelius & Collins, Nashville, Tenn., for defendant.

## MEMORANDUM ORDER

EDWARD A. BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Goggin Truck Line, Inc. ("Goggin"), to stay these proceedings and compel alternative dispute resolution.

The plaintiffs in this case, the Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health Fund") (collectively, "the Funds"), are multiemployer funds providing pension coverage and health benefits to employees covered by collective bargaining agreements negotiated between employers and local unions affiliated with the International Brotherhood of Teamsters. Goggin is one such employer, engaged in the business of transporting freight. The Funds bring the instant action under § 502(e)(1) of the Employee Retirement Income Security Act ("ERISA") to recover contributions they claim Goggin owes under the applicable collective bargaining agreement. Goggin argues that this dispute is subject to alternative dispute resolution under the collective bargaining agreement and moves to stay these proceedings and for an order compelling such alternative dispute resolution. ("ADR").

## BACKGROUND

In 1982 and 1985, Goggin entered into certain Memoranda of Understanding with Teamsters Local 480, which incorporated the nationwide collective bargaining agreement known as the National Master Freight Agreement ("NMFA") and certain

[1.] The NMFA & Southern Agreements define "casual employee" as a type of parttime or replacement employee who is not on the seniority list and is not a probationary employee.

regional supplemental agreements known as the Southern Conference Area Local Freight Forward Pick-up and Delivery Agreements ("Southern Agreements") (collectively, "CBA"). One of Goggin's negotiators during the first set of talks in 1982 was a Mr. R.V. Pulliam, a Pension and Health Fund Trustee since 1979. (Central States' Memorandum in Response ("Funds' Resp."), Ex. D, ¶ 2). According to the Funds' interpretation of the CBA, Goggin was required to contribute thirteen dollars a day for each "casual employee" in its hire.[1] (Funds' Resp., at 2). The central dispute between Goggin and the Funds is whether such an obligation exists under the CBA.

Pursuant to the CBA's terms (Funds' Resp., Ex. B, App. 2 (NMFA & Southern Agreement, 1985–1988, Arts. 50–51, at 111; 113)), the Pension Fund conducted an audit of Goggin's contributions on behalf of "casual employees" for the period of 1981 to 1990, and discovered that Goggin owed approximately $45,000. (Funds' Resp., Ex. A, ¶ 4). By the same token, Goggin had paid more than $3,000 in such contributions. (*Id.*) In addition, the audit found that Goggin owed $1,553.53 in Health Fund contributions through 1990. (*Id.*, at ¶ 5). This arrearage apparently consists of Goggin's failure to pay interest on a rebilling stemming from a retroactive contribution rate increase. (*Id.*). Goggin denies that the CBA required it to make the allegedly delinquent contributions. (Funds' Resp., Ex. D, ¶¶ 2–3).

Goggins' instant motion arises out of language that appears in both versions of the NMFA & Southern Agreements with respect to both Pension Fund and Health Fund contributions. Under the CBA's for 1982–1985 and for 1985–1988:

[d]isputes or questions of interpretation concerning the requirement to make contributions on behalf of particular employees or classifications of employees shall be submitted directly to the Conference Joint Area Committee by the Employer, the Local Union or the Trustees.

(Funds' Resp., Ex.B, App. 2) (NMFA & Southern Agreement, 1985–1988, Art. 41, Sec. 2, at 89); App. 7 (NMFA & Southern Agreement, 1982–1985, Art. 3, Sec. 2, at 12).

Relying on this language, Goggin argues that the appropriate arena for the dispute over "casual employee" contributions is this alternative dispute mechanism, the Conference Joint Area Committee, and asks for an order compelling such ADR.[2] The Funds argue that ADR is inappropriate in this case because they are asserting statutory rights under ERISA, they were not a party to the NMFA & Southern Agreements, and Goggin should be found to have waived arbitration by participating in this litigation. First, we note that the line of cases upon which the Funds rely to support their arguments regarding the fact that they were not parties to the CBA are distinguishable from the case at bar. The circumstances surrounding the negotiation of the CBA and the language in which those negotiations resulted, as will be discussed, places the Funds in a unique position when compared to the pension and welfare plans in those cases the Funds cite. Second, as we interpret the case law on this matter, it would appear that the fact that the Funds seek to advance statutory rights is not dispositive of the issue presented here. Finally, we must dismiss the Funds' waiver argument. Based upon the analysis below, then, we find ADR appropriate under the CBA in this case.[3]

## ANALYSIS

▉ The Funds in this case are not parties to the CBA between Goggin and Teamster Local 480, but are merely third-party beneficiaries. *See Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 370, 104 S.Ct. 1844, 1848, 80 L.Ed.2d 366 (1984); *Central States, S.E. & S.W. v. Gerber Truck,* 870 F.2d 1148, 1151 (7th Cir. 1989). As a general rule, third-party beneficiaries are subject to the defenses that the promisor—here, Goggin—could raise in a suit by the promisee—here, the union local. *See Schneider,* 466 U.S. at 370, 104 S.Ct. at 1848; *Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 313 (2nd Cir.1990). Collective bargaining agreements, however, have been found to be an exception to this rule. In *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 468–469, 80 S.Ct. 489, 494–495, 4 L.Ed.2d 442 (1960), the Supreme Court held that an employee could not raise the union's breach of a collective bargaining agreement as a defense against an employee benefit plan's suit for delinquent contributions unless the collective bargaining agreement preserved such a defense in "unequivocal words." *Id.* at 470–471, 80 S.Ct. at 495–496. More recently, in *Schneider Moving,* the Court characterized the rule that the promisor may assert any defense against the beneficiary that it could assert against the promisee as a rule of construction, useful only in determining contractual intent. 466 U.S. at 370, 104 S.Ct. at 1848. The Court went on to hold that where the language of the

---

**2.** In this regard, we note that the parties refer to this provision, at times, as ADR, grievance procedure, or arbitration. We confine our decision to the above-cited terms of the CBA, whether that mechanism can be called arbitration or grievance procedure.

**3.** For the sake of thoroughness, we take note of Judge Ann Williams' opinions in *Central States v. Tank Transport,* No. 90 C 5524, which dealt with issues similar to those now before the court and involved, as here, an employer's motion to compel arbitration under a CBA. On February 12, 1991, Judge Williams dismissed many of the same arguments the Funds advance here and, in a decision based substantially on the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* granted the employer's motion and dismissed the Funds' claims. Shortly thereafter, the appropriate grievance committee met and determined that the employer's failure to contribute to the Funds did not violate the CBA and the

matter, therefore, did not actually proceed to arbitration. The case came back before Judge Williams on the Funds' motion for reconsideration and the court reversed its earlier decision, based on a determination that the Federal Arbitration Act was, in fact, inapplicable and in light of the grievance committee's determination that arbitration was unnecessary. *Central States v. Tank Transport,* 779 F.Supp. 947 (N.D.Ill.1991). While Judge Williams' opinions are informative, we do not feel either is substantially influential here as the facts of this case are significantly different, as will be discussed, and we begin with theDassumption that the Federal Arbitration Act is not applicable to this matter which involves "workers engaged in interstate commerce." 9 U.S.C. § 1. The fact that the Federal Arbitration Act's presumption in favor of arbitration is inapplicable here does not, however, give rise to a presumption against arbitration or ADR.

contract, or the circumstances under which it was executed, establish that the parties provided that the right of the beneficiary is not to be affected by any defense the promisor might have against the promisee, the rule is inapplicable. 466 U.S. at 371, 104 S.Ct. at 1848. Because the collective bargaining agreement in *Schneider Moving* did not evidence "any intent to condition the contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion of the arbitration procedures contained in the ... collective-bargaining agreements," the Court found that the trustees were not required to arbitrate their contribution claims before bringing them in federal court under § 502 of ERISA. 466 U.S. at 376, 104 S.Ct. at 1851.

The circumstances of the instant case are significantly different from those in *Schneider Moving* and *Benedict Coal.* In *Benedict Coal,* the collective bargaining agreement failed to preserve the defense asserted by the employer; in *Schneider Moving,* the collective bargaining agreement made no mention of the trustees in its arbitration clause, permitting only the union or the employer to invoke the ADR process. Here, the collective bargaining agreement explicitly states that union, employer, or trustee may invoke ADR—it could not be more specific. Furthermore, although the Funds were not technically parties to the collective bargaining agreement, they cannot liken their position to that of the pension and welfare plans in *Gerber Truck.* There, the union and employer reach an arrangement with respect to pension and welfare plan contributions of which the plans were never aware. Here, conversely, at least one of the Funds' trustees, Mr. Pulliam, participated in the negotiations of the NMFA and Southern Agreements and was instrumental in developing their terms. The Funds cannot now plead ignorance of those terms, regardless of the apparent conflict of interest in Mr. Pulliam's conduct as a negotiator.

Finally, we must point out one additional difference between the situation at bar and the line of cases, on which the Funds hope to rely, holding that collective bargaining agreements are exceptions to the rule of construction regarding promisors' defenses against third-party beneficiaries. Those cases all involve some type of language or arrangement between the union and the employer that is unknown to the fund or trustees. In *Schneider Moving,* the employees sought to invoke an ADR clause that referred only to union and employer; an analogous situation is found in *Local Union 597 v. Mosbeck Indus. Equipment, Inc.,* 856 F.2d 837, 841–842 (7th Cir.1988) (holding the plain language of the collective bargaining agreement did not manifest an intent to require Trustees to arbitrate contribution claims). Similarly, the court in *Gerber Truck* refused to allow the employer to void the collective bargaining agreement, including its contribution provisions, with a defense that the union's fraudulent inducement made the CBA voidable. 870 F.2d at 1154. In *Brower's Moving,* the court refused to allow the employer to raise defenses going to the validity of the collective bargaining agreement as between employer and union. 907 F.2d at 314. In general, courts have refused to accept defenses which go to union's ability to enforce the collective bargaining agreement. *Id.; Gerber Truck,* 870 F.2d at 1153. The matter before the court is removed from those types of circumstances: here, the employer does not seek to void the collective bargaining agreement, but to enforce its clear language. That language requires the Funds to submit their claims for resolution to the Conference Joint Area Committee.

■ As we interpret the case law the parties present, we also feel it is of no moment that the rights which the Funds seek to enforce are statutory. In this regard, we are informed by the decision in, and the history behind, *Bird v. Shearson Lehman/American Exp., Inc.,* 926 F.2d 116 (2nd Cir.1991) ("Bird II"). In *Bird v. Shearson Lehman/American Exp., Inc.,* 871 F.2d 292 (2nd Cir.1989) ("Bird I"), the Court of Appeals for the Second Circuit affirmed a district court decision that refused to allow a defendant to invoke an ADR clause with respect to a breach of fiduciary duty claim arising under ERISA.

The Second Circuit held that Congress intended to preclude a waiver of judicial remedies for statutory ERISA claims, reasoning that the text of ERISA—particularly the provisions for exclusive federal jurisdiction of statutory claims, the remedial nature of the statute, and the statute's underlying purposes—compelled the conclusion that "Congress intended the federal courts to be the exclusive forum for resolving disputes of substantive rights." *Bird I,* 871 F.2d at 295.

The appellants in *Bird I* filed a petition for writ of certiorari in the Supreme Court, and while that was pending, the Court issued its decision in *Rodriguez de Quijas v. Shearson Lehman/American Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). In that case, the Court held that agreements. to arbitrate statutory claims arising under the Securities Act of 1933 were enforceable. In the wake of this ruling, the Court granted certiorari in *Bird I,* and remanded the case for reconsideration in light of the *Rodriguez* opinion. *Shearson Lehman/American Express, Inc. v. Bird,* 493 U.S. 884, 110 S.Ct. 225, 107 L.Ed.2d 177 (1989); *Bird II,* 926 F.2d at 118. The Second Circuit then remanded the case to the district court in accordance with the Supreme Court's remand. *Bird II,* 926 F.2d at 118. The district court then affirmed its original opinion and, once again, the defendant appealed. *Id.*

On appeal, the Second Circuit first stated that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *Id.* at 119, *quoting Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1986). The court tempered this statement, however, with the observation that Congress may override the enforceability of such an agreement by a contrary statutory provision. *Id.* at 119, *citing Rodriguez,* 109 S.Ct. at 1921. The court then went on to examine the text and legislative history of ERISA, and to consider whether arbitration would be inconsistent with the statute's underlying purposes.

In short, the Second Circuit found that the fact that Congress provided ready access to federal court and for exclusive federal jurisdiction over ERISA claims did not mean that parties are required to avail themselves of such a forum. *Id.* at 120. Similarly, the court also found that these provisions did not mean an arbitral forum was unavailable. *Id.* The Second Circuit concluded that neither ERISA's text nor legislative history supported a finding that Congress intend to preclude arbitration brought pursuant to it. *Id.* Further, the court also found that arbitration was not inconsistent with ERISA's remedial purposes. *Id.* Accordingly, the Second Circuit held that statutory claims arising under ERISA may be the subject of compulsory arbitration. *Id.* at 122. Subsequently, on June 28, 1991, the Supreme Court denied certiorari. —— U.S. ——, 111 S.Ct. 2891, 115 L.Ed.2d 1056.

In light of the Supreme Court's tacit blessing of *Bird II*'s line of reasoning, as might be gleaned from the history surrounding the case, we reject the Funds' arguments based on statutory rights and Congressional preclusion of alternative dispute resolution. The CBA in this case does not dictate that the Funds forgo a substantive right, but merely that they submit the resolution of their claim to an arbitral, rather than judicial, forum. The facts of this case, including the clear language of the CBA and the circumstances surrounding its negotiation, serve to underscore the propriety of alternative dispute resolution. Combining those facts, especially their distinction from those at work in the line of cases represented by *Schneider Moving,* with the reasoning in Bird II, we find that the claims the Funds seek to advance under ERISA are covered by the ADR clause of the CBA, as they are "disputes ... concerning the requirement to make contribution on behalf of particular employees or classifications of employees."

 We turn now to address two additional points: Goggin's purported waiver of ADR and the Funds' claims for contributions prior to April, 1982. First, we note that the Funds argue that Goggins' partic-

ipation in these proceedings for fourteen months prior to filing its motion to compel ADR constitutes a waiver of its defense of alternative dispute resolution. The record indicates that Goggin raised its defense early on in its answer, although it may have been tardy in bringing the instant motion to compel alternative dispute.resolution. Ordinarily, raising the issue of ADR in an answer is sufficient to preserve the defense. *Mautz & Oren v. Teamsters Local No. 279,* 882 F.2d 1117, 1126 n. 16 (7th Cir.1989) (collected cases). This is especially the case where, as here, the party raising the issue of ADR is not the party seeking relief for the alleged violation of the collective bargaining agreement. *Id.* at 1126. The cases upon which the Funds rely to find a waiver—*Ohio–Sealy Mattress Mfg. Co. v. Kaplan,* 712 F.2d 270 (7th Cir.1983); and *Central States Health and Welfare Fund v. B & L Motor Freight, Inc.,* No. C–2–85–280 (S.D.Ohio December 10, 1987)—are significantly dissimilar to the case at bar. In *Ohio–Sealy,* the defendant offered the plaintiff the choice of ADR or litigation and then, much later, demanded arbitration. 712 F.2d at 273. In *B & L Motor Freight,* the defendant failed to raise the issue of ADR until well into litigation. (Funds' Resp., Ex. F, at 21). Neither of these cases can be likened to the chronology of the instant case, in which Goggin asserted its ADR defense from the onset of litigation. Accordingly, we find no waiver in this case.

■ Finally, we note that the Funds argue that it need not submit their claims for contributions prior to April, 1982 to ADR. Here, we must agree with the Funds. We base our findings in this matter on the language of the CBA, which was not effective prior to April, 1982. The Funds apparently have claims stemming from 1981, well before the CBA requiring ADR took effect. Those claims for the period prior to April, 1982, do not fall under the agreements we have examined in this case and, therefore, are not subject to ADR.

## CONCLUSION

For. the foregoing reasons, it is hereby ordered that defendant's motion to compel alternative dispute resolution be granted to the extent consistent with this Memorandum Order, and that these proceedings be stayed.