## SCHNEIDER MOVING & STORAGE CO. *v.* ROBBINS ET AL.

No. 82–1860.  Argued February 21, 1984—Decided April 18, 1984*

---

*Together with No. 82–1862, *Prosser's Moving & Storage Co. v. Robbins et al.*, also on certiorari to the same court.

POWELL, J., delivered the opinion for a unanimous Court.

*David F. Yates* argued the cause and filed briefs for petitioner in No. 82–1860. *Charles W. Bobinette* argued the cause for petitioner in No. 82–1862. With him on the briefs was *Kevin M. O'Keefe.*

*Russell N. Luplow* argued the cause for respondents. With him on the brief were *Diana L. S. Peters* and *Donald J. Weyerich.*†

JUSTICE POWELL delivered the opinion of the Court.

The issue presented in these two cases is whether the trustees of two multiemployer trust funds may seek judicial enforcement of the trust terms against a participating employer without first submitting to arbitration an underlying dispute over the meaning of a term in the employer's collective-bargaining agreement.

†*Stephen P. Pepe* and *Joel M. Grossman* filed a brief for the Merchants and Manufacturers Association et al. as *amici curiae* urging reversal.

*Michael H. Gottesman, Robert M. Weinberg, Laurence Gold,* and *George Kaufmann* filed a brief for the American Federation of Labor and Congress of Industrial Organizations as *amicus curiae* urging affirmance.

I

Respondents are the trustees of two multiemployer trust funds, the Central States, Southeast and Southwest Areas Pension Fund and the Central States, Southeast and Southwest Areas Health and Welfare Fund (Trust Funds).[1] Petitioners are two employers—Prosser's Moving & Storage Co. (Prosser's) and Schneider Moving & Storage Co. (Schneider)— who have agreed to participate in the trust funds. Respondents filed separate complaints against petitioners in the United States District Court for the Eastern District of Missouri, claiming that petitioners had failed to meet their contribution requirements and had refused to allow an audit of their payroll records. Respondents requested the District Court to order an accounting and immediate payment of all sums thereby determined to be due. They alleged federal subject-matter jurisdiction under § 301(a) of the Labor Management Relations Act (LMRA), 29 U. S. C. § 185(a), and § 502 of the Employee Retirement Income Security Act (ERISA), 29 U. S. C. § 1132.[2] Petitioners defended on the ground that respondents' complaints raised disputed interpretations under the collective-bargaining agreements that first must be submitted to the applicable arbitration procedures.[3] The District Court agreed with petitioners and

---

[1] Both multiemployer funds were established pursuant to § 302(c)(5) of the Labor Management Relations Act, 29 U. S. C. § 186(c)(5). The funds also are governed by the Employee Retirement Income Security Act, 29 U. S. C. § 1001 et seq., and the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), 29 U. S. C. § 1145.

[2] Section 301(a) of the LMRA provides a federal forum for suits to enforce labor contracts, including pension and welfare fund agreements. Section 502 of ERISA also provides a federal forum for enforcement of the various duties imposed by such trust fund agreements.

[3] Cf. Republic Steel Corp. v. Maddox, 379 U. S. 650 (1965) (exhaustion of contract grievance procedure generally is a predicate to suits seeking to enforce collective-bargaining agreements under § 301 of the LMRA). Petitioners' responses to respondents' claims differed in some minor respects. The primary issue in the Prosser case was whether the collective-bargaining agreement limited the scope of the trustees' asserted authority

dismissed the suits pending arbitration. It held that although arbitration is not a prerequisite for "simple collection matters" in which the employer's liability under the collective-bargaining agreement is clear, arbitration is required in claims such as these where interpretation of the collective-bargaining agreement is at issue.

A three-judge panel for the Court of Appeals for the Eighth Circuit reversed and held that arbitration was not a prerequisite to federal suit in these two cases. *Robbins v. Prosser's Moving & Storage and Schneider Moving & Storage*, Nos. 80–2116, 80–2117 (CA8, Mar. 24, 1982) *(per curiam).* An en banc court of the Eighth Circuit agreed with the panel. After examining competing considerations under the federal labor laws and under the federal laws governing employee trust funds, the court held that the relevant agreements indicated no intent on the part of the parties to require the arbitration of contractual disputes between the trustees and the employers and thus that failure to arbitrate could not bar respondents' suits. The en banc court, therefore, reversed the decision of the District Court and remanded for further proceedings. 700 F. 2d 433 (1983). We granted certiorari in view of an apparent conflict among the Circuits on this issue.[4] 464 U. S. 813 (1983). We now affirm.

---

to conduct an audit of the company's records. Schneider submitted to the audit, but claimed that the trustees' suit raised a dispute under the collective-bargaining agreement as to which employees were covered by the contribution requirement. Relevant here, however, is the fact that both petitioners defended on the ground that the trustees' complaints raised arbitrable disputes under the collective-bargaining agreements that could not be reviewed by a federal court prior to arbitration.

[4] See, *e. g., Central States, Southeast and Southwest Areas Pension Fund v. Howard Martin, Inc.*, 625 F. 2d 171 (CA7 1980) (arbitration of disputes between the trustees and employer involving interpretations of a collective-bargaining agreement a prerequisite to judicial review); *Trustees of National Benefit Fund for Hospital & Health Care Employees v. Constant Care Community Health Center, Inc.*, 669 F. 2d 213 (CA4 1982) (same).

## II

As resolved by the Court of Appeals, these cases present a narrow question of contract interpretation. The en banc court considered only whether the parties to the collective-bargaining agreements and the trust agreements intended to require the arbitration of disputes between the trustees and the employer before the trustees could exercise their contractual right to sue in federal court.[5] Because of its resolution of this issue, the Court of Appeals did not reach respondents' argument that requiring the trustees to submit their disputes with the employer to the applicable arbitration procedures was prohibited as a matter of law. If we agree with the Court of Appeals that the parties did not provide for such an arrangement, we also need not address that argument. We turn first, therefore, to an analysis of the relevant agreements.

Petitioners entered into collective-bargaining agreements with Local 610 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America

---

[5] The en banc court expressed its holding at the outset as follows:

"Our conclusion is that the national pension policy embodied in the [LMRA], [ERISA], and the [MPPAA], together with the terms of the collective-bargaining agreement and accompanying trust instruments, dictate that these trustees not be bound by the arbitration procedure, which they have no right to initiate." 700 F. 2d, at 435.

The subsequent explanation of that holding, and the court's concluding statements, make clear that it consulted the "national pension policy" only to ascertain the parties' contractual intent. After examining the agreements, the en banc court held:

"[A]rbitration, pension funds, and health and welfare funds, are all matters of contract. They either exist or not as the parties have agreed in the collective-bargaining contract and related documents. If the agreements in the cases before us provided in express words that trustees' claims could not come to court before questions of contract interpretation had been settled by arbitration, this would be quite a different case. But they do not." *Id.*, at 442.

(Union). These agreements required petitioners to participate in the two multiemployer trust funds, and incorporated the terms of the two trust agreements by reference.[6] The trust agreements[7] required petitioners to contribute to the funds according to the applicable terms of their separate collective-bargaining agreements.[8] To ensure compliance with the contribution requirements, the trust agreements gave the trustees the authority to examine petitioners' payroll records.[9] If the trustees determined that petitioners were not complying with their contribution requirements, they had the authority under the trust agreements to initiate legal proceedings to enforce those requirements:

> "The Trustees . . . shall have the power to demand and collect the contributions of the Employers to the Fund. [The] Board of Trustees shall take such steps, including the institution and prosecution of, and intervention in, any legal proceedings as the Trustees in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions . . . which may be owed to the Trust Fund, without prejudice, however,

---

[6] See Art. XV, Sec. 3 (Health & Welfare); Art. XVI, Sec. 3 (Pension) of Prosser's Collective-Bargaining Agreement, App. 76.

[7] The parties inform us that the relevant terms of the Pension Fund Agreement and the Health and Welfare Fund Agreement are identical in all pertinent respects. Only the Pension Fund Agreement was included in the joint appendix. References, therefore, will be made only to that agreement.

[8] Article III, Sec. 1, of the Pension Fund Agreement provides in part: "Each Employer shall make continuing and prompt payments to the Trust Fund as required by the applicable collective bargaining agreement between the parties." App. 21.

[9] Article III, Sec. 5, of the Pension Fund Agreement provides in part: "The Trustees may, by their representatives, examine the pertinent records of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust." App. 23.

to the rights of the Union to take whatever steps which may be deemed necessary for such purpose." Pension Fund Agreement, Art. III, Sec. 4., App. 22.

The relevant terms of the two collective-bargaining agreements at issue here are substantially identical. Both required weekly payments to the funds for "each regular Employee." No contributions were required for employees who worked "either temporarily or in cases of emergency."[10] Each collective-bargaining agreement also contained an arbitration clause that required the arbitration of any "differences . . . between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of [the collective-bargaining] agreement." *Id.*, at 55. Arbitration could be demanded by either the Union or the Company in the case of Prosser's collective-bargaining agreement, or by the Union alone in the case of Schneider's collective-bargaining agreement. No other parties were given access to the arbitration process.

## III

### A

Petitioners argue that as third-party beneficiaries of the collective-bargaining agreements, the trustees are bound by the arbitration clauses provided therein to the same extent the Union would be if it were seeking judicial enforcement of those agreements. They rely on the general rule that the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract. See Restatement (Second) of Contracts § 309, Comment *b* (1981); S. Williston, Contracts § 395 (3d ed. 1959); 4 A. Corbin, Contracts § 819 (1951). That rule, however, is merely a rule of construction useful in determining contractual intent. It should not be applied so inflexibly

---

[10] See Prosser's Collective Bargaining Agreement, Art. XV, Secs. 5 and 6 (Health & Welfare); Art. XVI, Secs. 5 and 6 (Pension). App. 77–79.

as to defeat the intention of the parties. Where the language of the contract, or the circumstances under which it was executed, establish that the parties have provided that the right of the beneficiary is not to be affected by any defenses that the promisor might have against the promisee, the rule is inapplicable.[11] Restatement (Second) of Contracts § 309, Comment *b* (1981). See also 4 A. Corbin, Contracts §§ 818, 819 (1951). Thus, the question is whether the parties to the agreements at issue here intended to condition the trustees' contractual right to seek judicial enforcement of the trust agreements on exhaustion of the arbitration procedures set forth in the collective-bargaining agreements.

### B

Before attempting to ascertain the parties' intent from the relevant agreements, we must determine whether the presumption in favor of arbitrability applied in the *Steelworkers Trilogy*[12] is applicable here. That presumption is an accepted rule of construction in determining the applicability of an arbitration clause to disputes between the union and the employer. Such a presumption furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing

---

[11] In *Lewis* v. *Benedict Coal Corp.*, 361 U. S. 459 (1960), for example, this Court rejected the argument that a rule of construction generally applicable to third-party beneficiaries was applicable to the trust beneficiaries of a collective-bargaining agreement. JUSTICE BRENNAN writing for the majority refused to employ the general rule of construction urged by the promisor because the collective-bargaining agreement at issue "[was] not a typical third-party beneficiary contract," and the circumstances surrounding the agreement counseled against the general inference. *Id.*, at 468–469. We adopt the same approach here and decline to adopt a mechanical application of the rule of construction urged by petitioners.

[12] See *Steelworkers* v. *American Manufacturing Co.*, 363 U. S. 564 (1960); *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574 (1960); *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593 (1960).

collective bargaining. See *Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U. S. 574, 578, 582–583 (1960). There is, however, less to commend the presumption in construing the applicability of arbitration clauses to disputes between the employer and the trustees of employee-benefit funds.

Arbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all.[13] We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.[14]

C

Without the presumption of arbitrability, the agreements at issue here evidence no intent on the part of the parties to require arbitration of disputes between the trustees and the employers. Neither the terms of the trust agreements nor those of the collective-bargaining agreements contain any such requirement, and the circumstances surrounding the

---

[13] In *NLRB* v. *Amax Coal Co.*, 453 U. S. 322, 337 (1981), this Court recognized that "disputes between benefit fund trustees over the administration of the trust cannot, as can disputes between parties in collective bargaining, lead to strikes, lockouts, or other exercises of economic power." We think that the same observation applies to disputes between the trustees and the employer. Although the employer has economic weapons at its disposal, they would serve little purpose in disputes with the trustees of employee-benefit funds.

[14] The presumption of arbitrability is, of course, generally applicable to any disputes between the *union* and the employer. In those circumstances, the presumption serves the national labor policy and fully accords with the probable intent of the parties.

execution of each suggest that none should be inferred. We discuss each agreement in turn.

Under the terms of the trust agreements, the trustees have broad authority to initiate *"any* legal proceedings [that they] in their discretion deem in the best interest of the Fund to effectuate the collection or preservation of contributions." [15] Nowhere in the trust agreements is the exercise of that authority expressly conditioned on the exhaustion of any contractual remedies that might be found in the collective-bargaining agreements of individual employers. Nor have petitioners successfully identified any evidence that supports their argument that the parties nevertheless intended such a condition. This is not surprising. These are multiemployer trust funds. [16] Each of the participating unions and employers has an interest in the prompt collection of the proper contributions from each employer. Any diminution of the fund caused by the arbitration requirements of a particular employer's collective-bargaining agreement would have an adverse effect on the other participants. [17] The enforcement mechanisms established in the trust agreements protect the collective interests of the parties from the delinquency of individual employers by allowing the trustees to seek prompt judicial enforcement of the contribution requirements. It

---

[15] Art. III, Sec. 4, of the Pension Fund Agreement, App. 22 (emphasis added).

[16] Respondents inform us that these funds are two of the largest Taft-Hartley multiemployer funds in the United States. They have roughly 500,000 participants and beneficiaries nationwide. Brief for Respondents 6, 18.

[17] Cf. *Lewis* v. *Benedict Coal Co.*, 361 U. S., at 469 ("[U]nlike the usual third-party beneficiary contract, this is an industry-wide agreement involving many promisors. . . . The application of the suggested [presumption] to this contract would require us to assume that the other [employers] . . . were willing to risk the threat of diminution of the fund in order to protect those of their number who might have become involved in local labor difficulties").

is unreasonable to infer that these parties would agree to subordinate those mechanisms to whatever arbitration procedures might be required by a particular employer's collective-bargaining agreement.[18]   In the absence of evidence to the contrary, therefore, we will not infer that the parties to the two multiemployer trust funds intended to condition the trustees' enforcement authority on the arbitration procedures contained in petitioners' separate collective-bargaining agreements.

Even if we assume that the parties to the collective-bargaining agreements could negate by their agreement the powers conferred on the trustees by the broader group of parties to the trust agreements, we find no attempt to do so here.   The arbitration clauses found in these collective-bargaining agreements contain no suggestion that either the petitioners or the Union intended to require arbitration of disputes between the trustees and the employers.   Under the terms of those agreements, arbitration is required only of "differences that arise *between the Company and the Union or any employee of the Company* as to the meaning or application of the provisions of this agreement."   App. 55 (emphasis added).   Although petitioners concede that neither clause expressly requires the arbitration of disputes between the trustees and the employers, they argue that we should infer such a requirement.   We see no justification for doing so.

---

[18] In general, the terms of the trust agreements and the collective-bargaining agreements seem to support precisely the opposite conclusion, suggesting that conflicts between the collective-bargaining agreements and the trust agreements will be resolved in favor of the latter.   The trust agreements expressly provide that "any construction [of the trust agreements] adopted by the Trustees in good faith shall be binding upon the Union, the Employees and Employers."   Art. IV, Sec. 17, Pension Trust Agreement, App. 26–27.   The collective-bargaining agreements, on the other hand, provide that the employer is deemed to have ratified "all actions already taken or to be taken by [the] trustees within the scope of their authority."   Art. XV, Sec. 3, Prosser's Collective Bargaining Agreement, App. 76.

As petitioners concede, the collective-bargaining agreements permit only the Union or the employer to invoke the arbitration process. It is unreasonable to infer that the parties to these agreements, or to the trust agreements, intended the trustees to rely on the Union to arbitrate their disputes with the employer. Because arbitration may be expensive,[19] there is no reason to assume, without more persuasive evidence than is presented here, that the Union intended to incur such expenses at the request of the trustees and without any requirement that the trustees provide reimbursement. It is even less likely that the parties to the *trust* agreements intended to agree to such complete reliance on the Union.[20] If the Union disagreed with the trustees' construction of the agreement, it could refuse to arbitrate the claim, or compromise the trustees' position in arbitration. The outcome of any subsequent judicial proceeding could be predetermined by the outcome of arbitration.[21] We find particularly implausible petitioners' further argument that a duty of fair representation may be implied, and that this should compel the Union to pursue the trustees' uncom-

---

[19] Article V, Sec. 4, of Prosser's Collective-Bargaining Agreement requires the Union to bear one-half the costs of arbitration with the employer. App. 57. The cost of arbitration is at least one reason why this Court has declined to agree that individual employees represented by the union have an absolute right to have their grievances taken to arbitration. See *Vaca* v. *Sipes*, 386 U. S. 171, 191–192 (1967). The union may exercise its discretion in good faith to settle grievances "prior to the most costly and time-consuming step in the grievance procedures." *Id.*, at 191.

[20] Indeed, the trust agreements seem to prohibit such an arrangement. Article II, Sec. 10, of the Pension Fund Agreement provides that "[n]o Employer or Union nor any representative of any Employer or Union . . . is authorized to . . . act as agent of the Trustees." App. 21.

[21] See *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S., at 596–599 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his"). See also *Barrentine* v. *Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 737 (1981).

promised claims through arbitration. There simply is no evidence that the Union owes any statutory or contractual duty of fair representation to the trustees.[22]   In the absence of such evidence, we will not engage the unlikely inference that the parties to these agreements intended to require the trustees to rely on the Union to arbitrate their disputes with the employer.[23]   Without that inference, as petitioners' concede, there is no basis for assuming that the parties intended to require arbitration of disputes between the trustees and the employer.

## IV

We hold that neither the trust agreements nor the collective-bargaining agreements at issue here evidence any intent to condition the contractual right of the trustees to seek judicial enforcement of the trust provisions on exhaustion of the arbitration procedures contained in petitioners' collective-bargaining agreements.   We, therefore, affirm the judgment of the Court of Appeals and remand both cases for further proceedings.

*It is so ordered.*

---

[22] A union's statutory duty of fair representation traditionally runs only to the members of its collective-bargaining unit, and is coextensive with its statutory authority to act as the exclusive representative for all the employees within the unit.   *Vaca* v. *Sipes, supra,* at 182; *Humphrey* v. *Moore,* 375 U. S. 335, 342 (1964).   Moreover, petitioners have pointed to no evidence that suggests the parties intended to impose a *contractual* duty of fair representation on the Union.

Even if there were a duty of fair representation here, it would accord the Union wide discretion and would provide only limited protection to trust beneficiaries.   A primary union objective is "to maximize overall compensation of its members." *Barrentine,* 450 U. S., at 742.   Thus, it may sacrifice particular elements of the compensation package "if an alternative expenditure of resources would result in increased benefits for workers in the bargaining unit as a whole." *Ibid.*

[23] Because there is no indication that the parties have agreed to the arrangement suggested by petitioners, we have no occasion to determine its legality.