MIC–RON GENERAL CONTRACTORS, INC., Petitioner,

v.

TRUSTEES OF the NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS BENEFIT FUNDS, Respondent.

No. 95 Civ. 8446 (WCC).

United States District Court, S.D. New York.

Dec. 21, 1995.

Harold, Salant, Strassfield & Spielberg, White Plains, New York, for Petitioner; Leonard Spielberg, of counsel.

1. The court has been presented with two agreements, covering the time periods July 1, 1990 to June 30, 1993, and July 1, 1993 to June 30, 1996.

Sapir & Frumkin L.L.P., White Plains, New York, for Respondent; Richard S. Corenthal, of counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Petitioner Mic–Ron General Contractors, Inc. ("Mic–Ron") commenced the present action against respondent Trustees of the New York City District Council of Carpenters Funds ("Trustees"), seeking a declaratory judgment that it may not be compelled to enter binding arbitration initiated by the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO ("District Council") and respondent Trustees. Respondent Trustees have moved to dismiss and to compel arbitration. Mic–Ron opposes the Trustees' motion, and seeks a preliminary injunction staying arbitration pending this court's resolution of the arbitrability of this dispute. This court has jurisdiction pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1947).

For the reasons discussed below, respondent Trustees' motion to dismiss and to compel arbitration is granted, Mic–Ron's petition for declaratory judgment enjoining arbitration is denied, and Mic–Ron's application for a preliminary injunction staying arbitration is denied as moot.

### BACKGROUND

Mic–Ron has been signatory to a series of collective bargaining agreements with the District Council during times relevant to this case.[1] Pursuant to the Agreement, Mic–Ron is required to make fringe benefit contributions to the New York City District Council of Carpenters Funds (the "Funds") on behalf of the employees covered by the Agreement. Art. XV § 1.

The Agreement contains the following relevant provisions:

References to "Art. __ § __" are to the July 1, 1990 to June 30, 1993 agreement (the "Agreement"). *Resp't Mot. to Dismiss*, Ex. A.

*Article I*

*Objectives*

[T]o insure the peaceable adjustment and settlement of any and all grievances, disputes or differences that may arise between the parties ...

*Article XII*

Section 1. All complaints, disputes and differences concerning the application, interpretation, effect, purpose or breach of any term or condition of this Agreement, or in the event there shall exist any claim, demand, dispute or controversy between the parties hereto, excluding the merits of jurisdictional dispute ... the parties hereto shall first attempt to settle and adjust such dispute, claim, demand or controversy by negotiation.

Section 2. Any grievance not resolved shall be submitted to arbitration.... It is the intent of parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration and that no defense to prevent the holding of the arbitration shall be permitted....

*Article XV*

Section 1. Every Employer covered by this Agreement shall make contributions for each hour worked by all Employees covered by this Agreement and employed by said Employer within the territory of this Agreement in the amounts hereinafter specified....

Section 2. [T]he Employer and the Union acknowledge that they are represented by their duly designated Trustees to administer the various Fringe Benefit Trust Funds provided for in this contract. Because of the various liabilities and responsibilities placed upon all parties to this Agreement, including all contractors and

union representatives and their respectively designated Trustees, each contractor hereby agrees that the Fringe Benefit Fund Trustees shall have the necessary powers to fulfill their fiduciary obligations in order to fully protect each employer signed to this Agreement and their employee-beneficiaries under the respective fund plans.

Section 8. Should any dispute or disagreement arise between the parties hereto, or between the Union and the Employer hereto, concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, or the Union, as the case may be. Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing shall be convened within twenty (20) days of submission and the arbitrator shall submit his award within twenty (20) days after the close of the hearing....

Pursuant to terms of the Agreement, the Funds audited Mic–Ron's books and records for the audit periods July 1, 1988 to June 30, 1992, and July 1, 1992 to December 31, 1994. The Funds claimed delinquencies in fringe benefit contributions in the amount of $60,-941.67 for the period July 1, 1988 to June 30, 1992, and in the amount of $28,673.10 for the period July 1, 1992 to December 31, 1994. The Funds disclosed the findings of the audits to Mic–Ron and requested Mic–Ron to pay the claimed delinquencies. Mic–Ron disputed the conclusions of the audit and has refused to pay the claimed delinquencies.

On September 11, 1995, Mic–Ron was served with a notice of arbitration by the District Council and the Fund. Corenthal Aff. ¶ 2; *Pet. for Removal,* Ex. A.[2] Roger E.

---

**2.** The notice reads in relevant part as follows: PLEASE TAKE NOTICE that, as legal counsel for the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, and the New York City District Council of Carpenters Benefit Funds and pursuant to the terms of its collective bargaining agreements with your

company, the Independent Building Construction Agreement (the "Agreement"), we hereby submit to arbitration before the Contract Arbitrator Roger E. Maher, the following dispute concerning your company's violations of the Agreement.

NATURE OF DISPUTE: The Union alleges that the company violated the Agreements in

Maher was designated by the District Council and respondent Trustees from the three arbitrators named in the Agreement to arbitrate disputes. On September 18, 1995, Mr. Maher issued a Notice of Hearing to Mic–Ron to arbitrate the dispute. Mic–Ron proceeded to bring an Order to Show Cause against the Trustees in the Supreme Court of the State of New York,. Westchester County to stay arbitration. On September 27, 1995, the Honorable Anthony Scarpino, Jr. granted a temporary restraining order staying arbitration of the dispute between the Trustees and Mic–Ron pending his decision on Mic–Ron's petition for a permanent injunction against arbitration. On October 3, 1995, the Trustees removed the action to federal court. On November 14, 1995, the Trustees submitted the instant motion to dismiss the petition and to compel arbitration. On November 29, 1995, the Trustees renewed its demand for arbitration on the ground that the temporary restraining order issued by the New York Supreme Court had expired ten days after its removal to federal court. Petitioner Mic–Ron now seeks a preliminary injunction against proceeding with the arbitration pending this court's consideration of Mic–Ron's petition for declaratory judgment permanently enjoining arbitration of this dispute.

## DISCUSSION

We need not consider Mic–Ron's application for preliminary injunction because, based on consideration of Mic–Ron's petition for declaratory judgment permanently enjoining arbitration, we now deny Mic–Ron's petition for declaratory judgment. We conclude that Mic–Ron may ·not escape its contractual obligation to arbitrate benefit fund payment disputes with the District Council by seeking to enjoin the Trustees from compelling arbitration. The Agreement unambiguously reflects the parties' intent to arbitrate between them all disputes arising out of the Agreement, including benefit fund payment disputes.

## I. The *Steelworkers* Trilogy

As set forth in the celebrated *Steelworkers* trilogy, there is a presumption of arbitrability of disputes arising out of a collective bargaining agreement. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Furthermore, the presumption in favor of arbitrability of labor disputes applies to disputes involving benefit issues. *See, e.g., Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *Bressette v. International Talc Co.*, 527 F.2d 211 (2d Cir.1975).

The special nature of the collective bargaining agreement was formally recognized when the Supreme Court decided *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). There, the union commenced an action in federal court under section 301 of

that it failed to pay employee benefit contributions on behalf of its member-employees totaling at least $60,941.67 for the period from July 1, 1988 to June 30, 1992 and $28,673.10 for the period from July 1, 1992 to December 31, 1994. All aforesaid actions(s) are in violation of Article XV relating to the payment of fringe benefit contributions on behalf of employees within the bargaining unit of your company's Agreements with·the District Council.
PRAYER FOR RELIEF: The District Council requests the payment of fringe benefits contributions that should have been paid but for the

Company's violation(s) of the Agreements, plus all interest, attorneys' fees, liquidated damages, auditors' fees and other costs as permitted by Article XV of the Agreements and for such other and further relief as the Arbitrator deems just and proper under the Agreements.
    . . . .
PLEASE TAKE NOTICE that a copy of this demand is being filed with the contract arbitrator, Roger E. Maher, with the request that he immediately schedule the requested arbitration. . . .

the Labor Management Relations Act, 29 U.S.C. § 185, to compel the employer to arbitrate a dispute in accordance with the parties' collective bargaining agreement. The Supreme Court held that an agreement to arbitrate is the *quid pro quo* for an agreement not to strike and that section 301 "expressed federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can best be obtained that way." 353 U.S. at 455, 77 S.Ct. at 917.

■ However, the presumption of arbitrability arguably does not apply where a benefit fund (or its trustees) asserts its interest as third party beneficiary to the collective bargaining agreement. In *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), while recognizing the general applicability of the *Steelworkers* trilogy, the Supreme Court declined to extend the presumption of arbitrability to reach disputes involving third-party beneficiaries to a collective bargaining agreement:

> Such a presumption [of arbitrability] furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.... There is less, however, to commend the presumption in construing the applicability of arbitration clauses to disputes between the employer and trustees of employee-benefit funds.... [T]he presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between a union and the employer apply to disputes between trustees and employers.

466 U.S. at 367, 104 S.Ct. at 1846–47. The Court noted that a collective bargaining agreement containing provisions for the benefit of an employee benefit trust fund is "not a typical third-party beneficiary contract." *Id.* at 371 n. 11, 104 S.Ct. at 1849 n. 11 (citing *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960)).

## II. The Presumption of Arbitrability

■ As a matter of law, we find that the audit dispute involves the District Council as well as the Funds and Mic–Ron. The notice of arbitration delivered to Mic–Ron clearly identifies the District Council as the party demanding arbitration:

> PLEASE TAKE NOTICE that, as legal counsel for the *District Council* ... and the ... *Funds* and pursuant to the terms of its collective bargaining agreements with your company ... we hereby submit to arbitration before the Contract Arbitrator ... the following dispute....
>
> The *Union* alleges that the company violated the Agreements in that it failed to pay employee benefit contributions on behalf of its member-employees:....
>
> The *District Council* requests the payment of fringe benefit contributions that should have been paid but ·for the Company's violation(s) of the Agreements....

*Pet. for Removal,* Ex. A (emphasis added).

■ Relying on *Schneider,* Mic–Ron argues that the presumption of arbitrability should not apply to the Funds, who are third-party beneficiaries to the Agreement. Mic–Ron cannot dispute that it is required to arbitrate fund payment disputes with the District Council.[3] Rather, Mic–Ron argues that the Trustees are the real party in interest, not the District Council, because this is a "collection dispute." Taken to its logical end, Mic–Ron's argument would produce the absurd result that the District Council would lack standing to compel Mic–Ron's compliance with its benefit fund payment obligations. The Agreement specifically grants the District Council the power to initiate

---

3. Mic–Ron avers that the Agreement is a "contract[ ] of adhesion imposed upon petitioner and other contractors similarly situated by the Union." *Aff. in Opp. to Mot. to Dismiss Pet. and in Support of Application for Prelim. Inj.* ¶ 5 ("Spielberg Aff."). However, Mic–Ron has been signatory to multi-employer agreements with the District Council for "approximately 30 years" and it signed such agreements in order to "do signifi-

cant work for private employers in the City of New York." Spielberg Aff. ¶¶ 4, 5. Mic–Ron knowingly chose to sign agreements with the District Council over the last thirty years, and benefitted from the agreements. Mic–Ron cannot now attack its obligation to arbitrate its dispute with the District Council and the Funds by condemning the Agreement as a contract of adhesion.

arbitration proceedings to enforce Mic–Ron's benefit fund payment obligations. *See* Art. XV § 8. Furthermore, in the notice and demand for arbitration submitted by the District Council and the Fund's attorney, *see Pet. for Removal,* Ex. A, the District Council demanded that Mic–Ron comply with its obligations to the District Council under the Agreement by making its benefit fund contribution payments. Clearly, the District Council has an interest in this dispute. Mic–Ron's obligation to make benefit fund contribution payments is set forth in its Agreement with the District Council. We rule that the presumption of arbitrability applies.

### III. Stay of Arbitration

■ The principles governing stays of labor arbitrations are well established. The Supreme Court and the Second Circuit have repeatedly held that a court's function is limited in a proceeding to stay such an arbitration, especially where the parties have agreed to a collective bargaining agreement containing a broad arbitration clause. *See United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *International Union of Elevator Constructors, AFL–CIO v. National Elevator Industry, Inc.,* 772 F.2d 10 (2d Cir.1985). The Agreement between Mic–Ron and the District Council contain such broad clauses, and any claim that falls within its scope will be considered arbitrable absent compelling proof to the contrary. The Second Circuit has made clear that a party seeking to overcome a presumption of arbitrability carries a heavy burden:

> [T]he authorities there quoted teach us that it is 'national policy' to encourage arbitration of labor disputes, that doubts as to arbitrability should be 'resolved in favor of coverage,' that language excluding certain disputes from arbitration must be 'clear and unambiguous' or 'unmistakably clear,' and that arbitration should be ordered 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' This is an imposing litany for the Company to overcome.

*International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. General Electric Co.,* 406 F.2d 1046, 1048 (2d Cir.1968).

Mic–Ron can point to no language in the Agreement that clearly and unambiguously excludes fund payment disputes from arbitration. On the contrary, the Agreement specifically provides that fund payment disputes shall be subject to binding arbitration upon commencement of arbitration proceedings by either party:

> Should any dispute or disagreement arise between the parties hereto, or between the Union and the Employer hereto, concerning any claims arising from payments to the Funds of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator....

Art. XV § 8. Contrary to Mic–Ron's assertion, the use of the word "may" does render arbitration permissive; it simply indicates that either party may initiate arbitration proceedings. Mic–Ron's misinterpretation is demonstrated by the language immediately following this provision:

> Unless a waiver is mutually agreed to in writing by the parties hereto, a hearing *shall* be convened within twenty (20) days of submission and the arbitrator shall submit his award within twenty (20) days after the close of the hearing.

*Id.* (emphasis added).

Mic–Ron's argument that the Trustees cannot compel arbitration because they are not a "party" to the Agreement is of no avail. The District Council's active participation in the fund payment dispute is fatal to Mic–Ron's argument. Mic–Ron cannot deny that it must arbitrate this dispute with the District Council, because the District Council undoubtedly is a party to the Agreement, and the Agreement contains broad provisions that unambiguously require that disputes between "parties" be arbitrated.

Mic–Ron argues that the fact that the Agreement contemplates that the Fund could bring judicial proceedings in these types of collection disputes, *see* Art. XV § 7, belies any purported inference that the parties intended for disputes between the Fund and Mic–Ron be solely adjudicated through arbitration. That the Agreement gives the

**214**

Trustees the right to bring suit against Mic–Ron does not conflict with the holding of this court. The fact that the Trustees have the right to initiate judicial proceedings does not grant Mic–Ron the same option. The Agreement clearly grants such power only to the Trustees, and not to Mic–Ron. While Mic–Ron now complains that such non-mutual authority to seek a judicial remedy is inequitable, Mic–Ron, by its own admission, has been signatory to such Agreements for some thirty years. These provisions have been collectively bargained for, and Mic–Ron accepted willingly in order to reap the benefits of being a union contractor. Mic–Ron acknowledges that there are contractors in New York City that have chosen not to sign such collective bargaining agreements.

*Schneider* is of no avail to Mic–Ron. The *Schneider* court declined to require the trustees to arbitrate because the agreements in that case gave the trustees the option of seeking arbitration or judicial proceedings, and the trustees chose to pursue remedies in court. As in *Schneider,* the Trustees here could have sought its remedy through judicial proceedings. However, the Trustees opted to join the District Council in bringing this dispute before an arbitrator. In *Schneider,* "[t]he arbitration clauses found in these collective-bargaining agreements contain[ed] no suggestion that either the [employer] or the Union intended to require arbitration of disputes between the trustees and the employers." 466 U.S. at 372, 104 S.Ct. at 1849. Because the District Council is a party to the arbitration, we need not determine whether this Agreement manifests an intent to require arbitration of disputes solely between trustees and employers.

### CONCLUSION

For the foregoing reasons, respondent Trustees' motion to dismiss and compel arbitration is granted, Mic–Ron's petition for declaratory judgment enjoining arbitration is denied, and Mic–Ron's application for preliminary injunction is denied as moot.

So Ordered.