MI INSTALLERS AND FURNITURE SERVICE, INC., Plaintiff,

v.

THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, the New York City District Council of Carpenters Welfare Fund, the New York City District Council of Carpenters Annuity Fund, the New York City District Council of Carpenters Apprenticeship, Journeyman Training, Education, and Industry Fund, the New York City District Council of Carpenters Charity Fund, and the New York City and Vicinity Carpenters Labor–Management Corporation, by Michael J. Forde and David Meberg, as Trustees, Defendants.

No. 06 CIV. 13312 VM.

United States District Court, S.D. New York.

Feb. 26, 2007.

**388**

Richard J. Reibstein, Russell E. Adler, Wolf Block Schorr and Solis–Cohen, LLP, New York, NY, for Plaintiff.

Nicholas Seth Hanlon, O'Dwyer and Bernstein, L.L.P., New York, NY, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff MI Installers and Furniture Service, Inc. ("MI") seeks declaratory and injunctive relief barring the defendants, the New York City District Council of Carpenters Pension Fund, the New York City District Council Carpenters Welfare Fund, the New York City District Council of Carpenters Vacation Fund, the New York City District Council of Carpenters Annuity Fund, the New York City District Council of Carpenters Apprenticeship, Journeyman Training, Education, and Industry Fund, the New York City District Council of Carpenters Charity Fund, and the New York City and Vicinity Carpenters Labor–Management Corporation (collectively, "Benefit Funds") from initiating arbitration proceedings. The Benefit Funds, although not signatories to the collective bargaining agreement (the "Agreement") establishing the right to arbitration, claim that the Agreement and the documents that it incorporates by reference provide them with such authority. Alternatively, the Benefit Funds assert that they have the right to initiate arbitration proceedings against MI as third-party beneficiaries to the Agreement. At the preliminary injunction hearing, the Benefit Funds consented to MI's earlier motion, pursuant to Rule 65(a)(2) ("Rule 65(a)(2)") of the Federal Rules of Civil Procedure, to consolidate the merits with MI's motion for a preliminary injunction.[1] *See* Fed. R.Civ.P. 65(a)(2).

For the reasons set forth below, MI's motion for a permanent injunction is

---

**1.** Rule 65(a)(2) provides that "[b]efore or after the commencement of the hearing of an application for preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Fed.R.Civ.P. 65(a)(2).

GRANTED; and the Benefit Funds are permanently enjoined from maintaining or seeking to maintain the arbitration proceedings commenced pursuant to the November 10, 2006 Notice of Intention to Arbitrate ("Final Arbitration Notice") and any other similar arbitration against MI.

## I. BACKGROUND

### A. PROCEDURAL BACKGROUND

MI commenced this action by filing a complaint, dated November 17, 2006 (the "Complaint"), followed by a motion for a temporary restraining order and preliminary injunction several weeks later. The parties agreed to a briefing schedule prior to the hearing on February 9, 2007. At oral argument, the Court consolidated the trial on the merits with the hearing on the preliminary injunction application pursuant to Rule 65(a)(2).[2] (*See* Transcript of Oral Argument (the "Transcript" or "Tr."), dated Feb. 9, 2007 at 22.)

### B. FACTUAL BACKGROUND

#### 1. Audit Findings

MI installs furniture in business offices and other locations and is an employer within the meaning of that term in Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). MI is also a party to an Agreement with the District Council of New York City and Vicinity of the United Brotherhood of Carpenters (the "Union"). (*See* Independent Building Construction Agreement, attached to Compl. as Ex. A.) The Agree-

ment covers the period from July 1, 2001 to June 30, 2006.

The Benefit Funds encompass jointly administered Taft–Hartley Trusts, governed by a board of trustees, half of whom are appointed by the Union and the other half by employers. *See* 29 U.S.C. § 186(c)(5). Michael J. Forde and David Meberg (the "Trustees") administer the multi-employer benefit funds. The Trustees establish and maintain the Benefit Funds pursuant to § 302(c)(5) of the LMRA.

This action arises in response to an audit conducted by Abrams, Herde & Merkel, LLP ("AHM"). In accordance with Article XV, Section 1 of the Agreement, AHM reviewed MI's books and records for the period between January 10, 2004 and December 25, 2005. The audit findings, communicated to MI in May 2006, concluded that MI was delinquent in making benefit fund contributions in the amount of $359,313.85, plus a delinquency assessment of $64,311.41 if the payment was not received by May 25, 2006.

After MI disputed the audit findings, AHM provided additional detail, indicating that its conclusions were based on MI's alleged "subcontract[ing] of work to a non-signatory affiliated company," Professional Furniture Finishing Company ("PFF"), a charge that Plaintiff challenges. MI claims that AHM erroneously determined that MI was responsible for making contributions for hours worked by PFF during the period covered by the audit.[3] The

---

**2.** The Court further notes that Arbitrator Robert Herzog ("Herzog") has agreed to stay arbitration proceedings pending resolution of this matter in light of the consolidation of trial on the merits with the motion for a preliminary injunction. (*Transcript,* at 22–23.)

**3.** Although the primary question before the Court is whether the Benefit Funds have the right to initiate arbitration proceedings, both

parties spend a considerable amount of argument discussing what the Court regards as a collateral issue: whether or not the enforcement of the Agreement by the Union through arbitration would violate the restrictions of §§ 8(e) and 8(b)(4)(B) of the National Labor Relations Act ("NLRA") by imposing bargaining obligations on a secondary employer, 29 U.S.C. §§ 158(e) and 158(b)(4)(B). (*See* Pl.'s Mem. in Supp. of Mot. for Prelim. Inj., dated

Benefit Funds responded by initiating arbitration proceedings.

### 2. *Arbitration Efforts*

On June 19, 2006, the Benefit Funds served a Notice of Intent to Arbitrate upon MI, seeking payment of $423,625.26. Although the Benefit Funds later withdrew this request, Herzog had already scheduled an arbitration hearing date on August 16, 2006. The Benefit Funds rescheduled the arbitration each month during August, September, and October of 2006.

Upon receiving a November date for arbitration, MI informed the Benefit Funds of what it perceived to be substantive and procedural defects with the arbitration efforts. First, MI indicated that no new Notice of Intention to Arbitrate was submitted following withdrawal of the previous notice in June. MI also advised the Benefit Funds of its belief that the arbitration was illegal as the Benefit Funds were seeking to enforce provisions of the Agreement that violated §§ 8(b)(4)(B) and 8(e) of the NLRA, and further contended that the Benefit Funds could not commence the arbitration since they were not parties to the Agreement. In response, the Benefit Funds submitted a new Notice of Intention to Arbitrate on November 10, 2006 but did not choose to add or substitute the Union as a party to the arbitration proceedings. Herzog rescheduled the proceedings for December 14, 2006 and indicated that he would suspend those proceedings only upon receiving an order to stay the arbi-

tration from a court of competent jurisdiction or presumably upon receiving a final decision from this Court regarding whether the Benefit Funds can proceed with the arbitration. (*See* Affirmation of Russell Adler, dated Dec. 8, 2006 ("Alder Aff.") at 8, ¶ 25.)

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is the duty of the court to use general contract law principles to determine whether the parties agreed to arbitrate disputes and to ascertain and implement the reasonable expectations of the parties. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *see also Spear, Leeds & Kellogg v. Central Life Assurance Co.,* 85 F.3d 21, 25 (2d Cir.1996). Agreement to be arbitrate must be "consciously made." *Fuller v. Guthrie,* 565 F.2d 259, 261 (2d Cir.1977).

■ A presumption of arbitrability exists in disputes arising out of a collective bargaining agreement. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). This pre-

---

Dec. 8, 2006 at 7–9; Defs.' Mem. in Opp'n of Mot. for Prelim. Inj., dated Jan. 5, 2007 ("Defs.' Mem."), at 10–16; Pl.'s Reply Mem. in Supp. of Mot. for Prelim. Inj., dated Jan. 19, 2007), at 7–10); (Defs.' Reply Mem. in Opp'n of Mot. for Prel. Inj., dated Jan. 26, 2007, at 7.) In that this disagreement animates the dispute in its entirety, the Court takes note of its marginal relevance and of a logical query that this secondary dispute in-

vites: If the matter can be properly explored and resolved in arbitration proceedings brought by the Union with the Benefit Funds subsequently joining as an interested party, or by the Benefit Funds initiating their own action in federal court as is clearly permitted by the Agreement, why did the Benefit Funds elect not to pursue either of these more straightforward courses of action?

sumption in labor disputes applies to matters involving benefit issues as well. *See Bressette v. Int'l Talc Co.,* 527 F.2d 211, 216 (2d Cir.1975). The origins of this premise stem from "expressed federal policy that federal courts should enforce these [arbitration] agreements on behalf of or against labor organizations and that industrial peace can best be obtained that way." *Mic–Ron Gen. Contractors Inc. v. Trustees of the New York City District Council of Carpenters Benefit Funds,* 908 F.Supp. 208, 212 (S.D.N.Y.1995) (*citing Textile Workers Union of America v. Lincoln Mills of Ala.,* 353 U.S. 448, 455, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)).

■ The presumption, however, does not extend to the third-party beneficiaries to a collective bargaining agreement, *e.g.,* employer benefit funds. *See Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 372, 104 S.Ct. 1844, 80 L.Ed.2d 366 ("[T]he presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between a union and the employer apply to disputes between trustees and employers.") In the absence of such a presumption, the Court must look to the agreements at issue to assess whether they evidence any intent by the parties to require arbitration of the disputes between the trustees and the employers. *See id.* Such a determination must also consider the elevated contractual status that trustees maintain in connection with collective bargaining agreements generally. *See Schneider,* 466 U.S. at 371 n. 11, 104 S.Ct. 1844 (noting that a collective bargaining agreement containing provisions for the benefit of an employee benefit trust fund is "not a typical third-party beneficiary contract"); *see also Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 314 (2d Cir.1990) ("[B]enefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations. For this reason, Congress [in adding § 515 to the Employee Retirement Income Security Act ('ERISA') ] placed employee benefit plans in a position superior to the original promisee.").

B. *THE COLLECTIVE BARGAINING AND TRUST AGREEMENTS*

■ As a threshold for its discussion, the Court examines some atypical aspects of the facts as presented by the parties. In general, trustees of benefit funds attempt to forego arbitration entirely in seeking to collect delinquent payments or other monies due to employees, unless the relevant collective bargaining agreement provides them with this right explicitly. *See, e.g., O'Hare v. Gen'l Marine Transp. Co.,* 740 F.2d 160, 168 (2d Cir.1984); *Local 8A–28A Welfare and 401(K) Ret. Funds v. The Millard Group,* 2004 WL 305729, at *3 (S.D.N.Y. Feb.18, 2004); *Local 8A–28A Welfare and 401(K) Ret. Funds v. Golden Eagles Architectural Metal Cleaning and Refinishing,* 277 F.Supp.2d 291, 297 (S.D.N.Y.2003). Historically, employers attempted to mandate the participation of benefit funds in arbitration proceedings, which could be lengthy and expensive, prior to litigation efforts; therefore, Congress passed laws providing benefit plan trustees trying to enforce an employer's promise to make contributions to benefit funds with direct access to district courts. *See* ERISA, 29 U.S.C. §§ 1132(e)(1), 1145; *see also Laborers Health and Welfare Trust Fund v. Advanced Lightweight Concrete Co.,* 484 U.S. 539, 547, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988).

In this instance, however, the Benefit Funds have elected *not* to use their right to initiate litigation as provided in Article XV, Section 6(a) of the CBA, but rather seek to commence arbitration proceedings before so doing and without the involve-

ment of the Union. *See Agreement,* attached as Ex. A of Compl., at 43; Defs.' Mem. at 11. The Benefit Funds have failed to put forth a reason for this choice in their submissions and have provided the Court with only a brief explanation during the hearing—that "national pension policy . . . favors the speedy and quick and painless recovery of delinquent contributions by funds from employers." (*Tr.,* at 17). Such meager support for seemingly inconvenient and potentially costly actions by the Benefit Funds raises concern in the Court's consideration of the merits.

### 1. *Provisions of the Agreement*

The Benefit Funds first argue that the Agreement grants the Trustees broad authority to collect delinquent contributions and that this authority must encompass access to arbitration proceedings because of its scope. The Court disagrees.

Article XII, Section 2, of the Agreement expressly governs the grievance procedure for all complaints and disputes. (*See Agreement,* at 33.) It states, "It is the intent of the parties hereto that all disputes between them, both within and outside of the Agreement, shall be submitted to arbitration . . . ." (*Id.*) The parties to the Agreement, identified on its first page, are MI and the Union. .(*Id.* ·at 1.) Accordingly, the terms of the Agreement are limited to those signatories.

Article XV, Section 7, reinforces this conclusion. It provides that:

> Should any dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, *either party* may seek arbitration of the dispute before the impartial arbitrator designated hereunder by filing a notice of intent to arbitrate in writing with said impartial arbitrator, and serving a copy

of said Notice on *the Employer* or *the Union,* as the case may be.

(*Agreement,* at 45)(emphasis added).

■ Intuitively, if an arbitration provision refers to disputes between only two parties, it cannot govern those of a third party not named in the agreement. *See McPheeters v. McGinn, Smith and Co., Inc.,* 953 F.2d 771, 774 (2d Cir.1992); *see also Chartier v. J & F Mgmt. Corp.,* 1992 WL 367115, at *7 (S.D.N.Y. Nov.25, 1992). The Benefit Funds are such third parties.

The scattered passages of the Agreement identified by the Benefit Funds as the source of their alleged broad right to arbitrate are accompanied either by restrictive language or by contradictory wording. For example, the Benefit Funds cite Article XV, Section 2, which states that the Employer and the Union "are represented by their duly designated Trustees . . . ." as an example of their broad grant of power. (*Agreement,* at 41.) This representation, however, is explicitly limited to the Trustees' responsibility for administering the named benefit funds and makes no mention of arbitration. (*See id.*) Section 6(a) of Article XV, provides the Trustees with the right to institute formal proceedings "before a court of competent jurisdiction" to collect delinquent contributions. (*Id.* at 43.) Such a provision only serves to indicate that the parties were well-aware of how they wanted the Trustees to proceed if a contribution dispute arose, yet chose not to include arbitration among those options. *See, e.g., Carpet Et Cetera, Inc. v. Forde,* 2006 WL 2959063, at *1 (S.D.N.Y. Oct.16, 2006)(citing a provision of the collective bargaining agreement that clearly allowed benefit funds to commence arbitration); *see also O'Hare,* 740 F.2d at 168. ·

### 2. *Language of the Trust Agreements*

The Benefit Funds next argue that Declarations of Trust that establish the

various benefit funds authorize a right to arbitration for the Trustees. Article V, Section 2, of the Amended Agreement and Declarations of Trust/New York City District Council of Carpenters Pension Fund ("Pension Fund Trust Agreement") states, "[n]othing in this section [which details the consequences of failure by an Employer to make required contributions to the Fund] shall be construed as a waiver or limitation on the Trust Fund's or the Trustees' right to enforce an Employer's Contribution obligation through any type of proceeding including litigation in state or federal court or arbitration." [4] (*Pension Trust Fund Agreement*, attached as Ex. A of Declaration of Steven Kasarda, dated Jan. 5, 2007 ("Kasarda Dec."), at 7.)

■ In that the very definition of waiver entails the "intentional relinquishment or abandonment of a known right or privilege," it follows that a right must first exist in order to be waived. *Doe v. Marsh*, 105 F.3d 106, 111 (2d Cir.1997) (*citing Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The right referenced here is that of the Trustees to enforce an employer's contribution obligation, defined in Article XV, Section 6(a) and limited to litigation in a district court. (*See Agreement*, at 43.) The mention of "arbitration," therefore, does not derive from any identifiable right of the Trustees in the Agreement.[5] Efforts to waive or limit the rights available to Trustees encompass only the right to access federal district court.

The second provision of the Pension Fund Trust Agreement excerpted by the Benefit Funds as evidence of their claimed right to arbitration, Article VII, Section 13, notes that "the collection or provision of records relating to Contributions which may be required under this Trust Agreement or collective bargaining agreement shall be subject to the grievance or arbitration procedure established by any collective bargaining agreement." (*Pension Trust Fund Agreement*, Ex. A, at 24.) This wording directly links the established arbitration procedure to that found in the Agreement. Again, that language constrains the Trustees' right to enforce a contribution, allowing only for the independent right to bring an action in federal district court. (*See Agreement*, at 43.)

## C. *THE BENEFIT FUNDS AS THIRD–PARTY BENEFICIARIES*

Relying on Second Circuit case law allowing third-party beneficiaries to commence arbitration proceedings against signatories to an arbitration agreement where the claims are closely tied to the originating contract, the Benefit Funds assert that they are entitled to initiate arbitration proceedings, even in the absence of express contractual language. *See Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir.2003); *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 62 (2d Cir.2001); *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406–08 (2d Cir.2001); Defs.' Mem. at 8. The Court

---

4. Identical language appears in the Trust Agreements of the Welfare, Annuity, Apprenticeship, and Vacation Funds as well. (*See* Kasarda Dec., Ex. B. at 9, Ex. C. at 9, Ex. D. at 8, and Ex. E. at 8.)

5. Moreover, the Benefit Funds did not present any other evidence of such a right in their written submissions relating to this proceeding, nor in their statements to the Court. (*See*

Defs.' Mem. at 6; *Tr.*, at 14–15.) The right may refer to those which might ensue if the Benefit Funds joined an arbitration proceeding initiated by the Union or one brought in tandem by the Union and the Benefit Funds. *See Mic–Ron*, 908 F.Supp. at 213–14. The larger point, that initiating arbitration proceedings is not the autonomous right of the Benefit Funds, still holds.

finds this argument flawed in several respects.

■ The Benefit Funds occupy the position of a third party beneficiary of the collective bargaining agreement between MI (promisor) and the Union (promisee). *See Benson*, 907 F.2d at 313 (*citing Robbins v. Lynch*, 836 F.2d 330, 333 (7th Cir.1988)). As such, they would generally be subject to the presumption of arbitrability. *See Millard Group*, 2004 WL 305729, at *2. Collective bargaining agreements, however, are an exception to this rule. *See Schneider*, 466 U.S. at 372, 104 S.Ct. 1844; *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468–69, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). Thus, with respect to a presumptive right to arbitration, employee benefit funds do not step into the shoes of the promisee. *See id.*

■ Instead, the doctrine of *Schneider* returns parties to the language of the agreement to determine whether or not the employer and the benefit fund consented to arbitration. *See* 466 U.S. at 371, 104 S.Ct. 1844 ("Without the presumption of arbitrability, the agreements at issue here evidence no intent on the part of the parties to require arbitration of disputes between the trustees and the employers. Neither the terms of the trust agreements nor those of the collective bargaining agreements contain any such requirement . . . ."); *see also Pipe Fitters' Welfare Fund v. Mosbeck Indus. Equip., Inc.*, 856 F.2d 837, 840 (7th Cir.1988) (holding that *Schneider* "stands for the proposition that courts must carefully examine the pertinent trust and collective bargaining agreements to determine whether parties intended to arbitrate disputes between trust funds and employers"). The Court has already set forth this analysis above, finding that no evidence of an intent by MI to arbitrate with the Benefit Funds exists.

That the Trustees now press for the protection *Schneider* sought to provide benefit funds generally, exhausting arbitration remedies prior to engaging in litigation, is somewhat puzzling. Preserving the solvency of employee benefit funds and the coverage of plan beneficiaries during employer-union disputes anchors the goal of national pension policy and explains why the presumption of arbitrability does not apply to benefit funds as third party beneficiaries. *See Robbins v. Prosser's Moving & Storage Co.*, 700 F.2d 433, 442 (8th Cir.1983); *see also Benson*, 907 F.2d at 313 (citing cases). It may be true that arbitration now offers the more expedient path to resolving contribution disagreements, but the choice to participate must be made by the actual parties to the collective bargaining agreement, rather than the Court.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiff MI ("MI") for an order providing permanent injunctive relief pursuant to Fed. R.Civ.P. 65 is GRANTED; and it is further

**ORDERED** that defendants the New York City District Council of Carpenters Pension Fund, the New York City District Council Carpenters Welfare Fund, the New York City District Council of Carpenters Vacation Fund, the New York City District Council of Carpenters Annuity Fund, the New York City District Council of Carpenters Apprenticeship, Journeyman Training, Education, and Industry Fund, the New York City District Council of Carpenters Charity Fund, and the New York City and Vicinity Carpenters Labor–Management Corporation herein are enjoined from initiating arbitration proceedings with respect to the underlying dispute in this action over benefit fund contributions by MI.

The Clerk of Court is directed to close this case.

**SO ORDERED.**