**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 95-20344**

_____

**PASTORINI-BOSBY TALENT, INC.;**
**ACTORS ETC; MAD HATTER INC.;**
**SHERRY YOUNG AGENCY INC.,**

**Plaintiffs-Appellees,**

**VERSUS**

**SCREEN ACTORS GUILD INC.,**

**Defendant-Appellant**

**and**

**AFTRA; PEGGY TAYLOR TALENT INC.; NEAL HAMIL**
**ENTERPRISES INC., doing business as Neal Hamil Agency;**
**INTERMEDIA CORPORATION INC.; J AND D TALENT INC.;**
**ROBERT BLACK AGENCY; LEIGHTON AGENCY; ACT GRISSOM;**
**DANI'S AGENCY; FOSL'S MODELING AND TALENT INC.; KRISTI'S**
**MODELING AND TALENT INC.; SIGNATURE MODEL & TALENT AGENCY**
**(TALENTS); TOR-ANN TALENT & BOOKING AGENCY,**

**Defendants.**

_____

Appeal from the United States District Court
For the Southern District of Texas
(5:93-CV-162-BrN)
_____

February 28, 1996

Before POLITZ, Chief Judge, DeMOSS and DENNIS, Circuit Judges.

PER CURIAM:[*]

_____

[*] Pursuant to Local Rule 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

This contract dispute arises out of a franchise agreement between the defendant, the Screen Actors Guild, and the plaintiffs, a group of talent agents authorized by that union to represent actors who are members of the Screen Actors Guild. The decisive issue presented for review is whether the parties' agreement requires that this dispute be arbitrated. The district court denied the Screen Actors Guild's motion to stay this action and compel arbitration. 9 U.S.C. §16(a)(1)(A). We affirm.

## STRUCTURE OF THE CONTRACT BETWEEN THE PARTIES

In 1939 the Screen Actors Guild (SAG) promulgated a set of regulations governing the representation of SAG-member actors by talent agents. Those regulations, referred to collectively as Rule 16(g), have been amended a number of times over the years and are presently the result of ongoing negotiation between SAG and two large talent agent associations, the Association of Talent Agents (ATA) and the National Association of Talent Representatives (NATR).

SAG, ATA and NATR have also entered into a contract, designated as the "Basic Contract," which governs an agent's right to a SAG franchise. Rule 16(g) and the Basic Contract expressly incorporate each other by reference, such that each is a part of the other.

Individual talent agents may apply to become a SAG-franchised talent agent. An agent must be SAG-franchised to represent SAG members. The basic terms of agreement between SAG and the plaintiff talent agents are embodied in the "Application for Screen

2

Actors Guild, Inc. Talent Agent's Franchise" and the "Supplemental Application." The Application effectively incorporates Rule 16(g), which in turn incorporates the Basic Contract. Therefore, the regulations, the Basic Contract, the Application and the Supplemental Application all combine to provide the terms of agreement between the defendant, SAG, and the plaintiff talent agents.

## 1990 AMENDMENTS TO RULE 16(g)

Article VII of the Basic Contract furnishes the procedure for amending the Basic Contract and Regulations. Amendment or modification requires the written consent of SAG, ATA and NATR and written notice to SAG-franchised talent agents. Thereafter, amendments are binding on franchised agents unless the agent notifies SAG in writing within 15 days that it refuses to be bound by the amendment.

In 1990 SAG, ATA and NATR executed a "Memorandum of Amendment" purporting to amend Rule 16(g) by specifying, *inter alia*, (1) that regulations limiting the fees and commissions earned by agents representing SAG-actors apply equally when the agent is representing a non-SAG actor, and (2) that agents cannot collect booking fees from a producer, regardless of whether the producer or the actor employed is a member of SAG.

SAG forwarded a form "Letter Agreement" to all franchised agents for their acceptance. The Letter Agreement informed SAG-franchised agents in bold print that they could avoid the binding effect of the amendments by providing written notice of their

3

refusal to be bound within 15 days. There is no dispute that the plaintiffs timely refused to abide by the proposed amendments to Rule 16(g).

### ARBITRATION PROVISIONS IN THE SAG/AGENT CONTRACT

The plaintiff talent agents in this case represent both SAG and non-SAG actors. Plaintiffs admit they sometimes charge non-SAG actors a higher commission for representation than the 10% that SAG-franchised agents may charge SAG members. Plaintiffs also admit they charge some non-SAG producers a "booking fee" for placing an actor with the producer. SAG challenged these practices with an arbitration proceeding, alleging that such practices constitute a willful and intentional violation of Rule 16(g), which is part of the SAG/agent contract. The talent agents filed this federal action challenging SAG's allegedly illegal enforcement of the 1990 amendments against them. SAG filed a motion to stay the action and compel arbitration which was referred to a magistrate judge[1] who held that the contract did not require that the dispute

---

[1] Another issue briefed on appeal in our Court was whether SAG's motion requested injunctive relief, such that the magistrate judge would have been without authority to enter a binding order. See 28 U.S.C. § 636(b)(1)(A) (district court may not designate a magistrate judge to determine a motion for injunctive relief). It is unnecessary for purposes of this appeal to reach that issue. Although the district court first addressed the issue of the magistrate judge's authority, its order concludes with the alternative holding that "even if the magistrate judge did not have the authority to deny a motion to stay action, the motion was correctly decided . . . ." Moreover, the district court's order dated April 12, 1995 does not deny "reconsideration" of the magistrate judge's ruling; it states that SAG's motion has been reviewed and that the district court determined that it should be denied. This alternative disposition adequately justifies the conclusion that the district court also reviewed the magistrate judge's disposition de novo. As the parties concede, de novo

4

be arbitrated and denied such motion.  The district court reviewed the case and entered an order denying SAG's motion.

The gravamen of the plaintiffs' first amended complaint is that SAG is attempting to enforce the 1990 amendments against the named talent agents in violation of state and federal law and under circumstances not permitted by the SAG/agent contract.  The primary issue, therefore, is whether the 1990 amendments ever became part of the SAG/agent contract such that they can be enforced against the plaintiff talent agents.  There is no provision in the SAG/agent contract which commits to arbitration a dispute between SAG and an agent about the content of their agreement.  Compare *Basic Contract, Article X* (disputes between SAG, ATA and NATR about terms of Basic Contract must be arbitrated); *Rule 16(g), § VI(A)* (all disputes "of every kind and nature" between the agent and the client must be arbitrated).

SAG argues that sections VIII and IX of Rule 16(g) require that the allegations in the talent agents' federal court complaint be arbitrated.  Those sections clearly contemplate arbitration of disciplinary actions brought by SAG against franchised agents.  SAG's complaint in arbitration alleges a disciplinary violation based on the talent agents' practices of charging non-SAG actors a higher commission and charging non-SAG producers a booking fee.  In 1990, SAG attempted to add contract terms that would prohibit these

_____

review by the district court cures any defect in the magistrate judge's authority over the matter.  See Estate of Conners v. O'Connor, 6 F.3d 656, 659 (9th Cir. 1993), cert. denied, 114 S. Ct. 693 (1994); see also Longmire v. Guste, 921 F.2d 620, 623 (5th Cir. 1991).

challenged practices. Those terms were refused by the talent agents, in accordance with rights granted them by Article VII of the Basic Contract. Thus, in effect, SAG's disciplinary proceeding assumes the separate question to be decided in the federal court action, i.e. whether the 1990 amendments were ever effectively incorporated into the agreement between SAG and the plaintiff talent agents.

We are persuaded that resolution of the threshold issue raised by the plaintiffs' federal court complaint -- what terms formed the parties' agreement -- is separate and distinct from SAG's contention that the talent agents' conduct violated Rule 16(g).

## CONCLUSION

The plaintiffs' challenge to SAG's allegedly illegal enforcement of the 1990 amendments to Rule 16(g) is a dispute separate and distinct from SAG's arbitration allegation that the talent agents' practices amounted to a willful and intentional violation of duties specified in Rule 16(g). The SAG/agent contract does not require that the claims alleged in the agents' complaint be arbitrated.

The district court's order denying the Screen Actors Guild's motion to stay and compel arbitration is AFFIRMED.

6

James L. Dennis, Circuit Judge, dissenting:

In this case, the plaintiffs - appellees, Pastorini-Bosby Talent, Inc., and other actors' agents' firms, sought to prevent the Screen Actors Guild, a labor union for members of the acting profession, from arbitrating a complaint before an arbitration tribunal. Pastorini-Bosby Talent, Inc. et al, the actors' agents, filed this action seeking a declaratory judgment that the union has no right to arbitrate its complaint based on the actors' agents' conduct and an order staying the arbitration. The union filed a motion to stay the court proceeding. The plaintiffs, actors' agents, moved for a preliminary injunction enjoining the arbitration. Both motions were referred to a magistrate who denied the union's motion to stay the court proceedings and held in abeyance the actors' agents' motion for a preliminary injunction pending a report from the parties as to the status of the arbitration. The union moved the district court for consideration *de novo* of the magistrate's denial of its motion to stay the court proceedings pursuant to 9 U.S.C. § 3. The district court denied the union's motion, holding that the magistrate had authority to enter the order denying the union's motion for a stay and that the magistrate had correctly decided the matter. The union appealed to this court.

As this Court recognized in a previous appeal, *Smith Barney Shearson, Inc. v. Boone*, 47 F.3d 750 (5th Cir.1995) the principles necessary to decide a case such as this were set out by the Supreme Court in a series of cases known as the Steelworkers Trilogy: *Steelworkers v. American Mfg. Co*., 363 U.S. 564 (1960); *Steelworkers v. Warrior & Gulf Navigation Co*., 363 U.S. 574 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp*. 363 U.S. 593 (1960). These precepts have served the labor relations community well, and have led to continued reliance on arbitration, rather than strikes or lockouts, as the preferred method of resolving disputes arising during the term of a collective-bargaining agreement. There is no reason either to question their continuing validity, or to eviscerate their meaning by creating an exception to their general applicability. *AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986).

7

The first principle is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf*, supra, at 582; *AT&T Technologies v. CWA*, supra at 648.

The second rule is that the question of arbitrability--whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance--is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court not the arbitrator. *AT&T Technologies*, supra at 649.

The third principle is that in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator. *Id*. at 649-650. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *American Mfg. Co.*, 363 U.S. at 568 (footnote omitted); *AT&T Technologies*, supra at 650.

Finally, when the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. at 582-583. Such a presumption is particularly applicable where the clause is as broad as the

8

one employed in this case, which provides for arbitration of "[a]ll disputes and controversies of every kind and nature whatsoever between an agent and his client arising out of or in connection with or under any agency contract between the agent and his client ... as to the existence of such contract, its execution, validity, the right of either party to avoid the same on any grounds, its construction, performance, non-performance, operation, breach, continuance, or termination ...".  In such cases, ["i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior &Gulf*, supra, at 584-585; *AT&T Technologies*, supra, at 650.

This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective bargaining agreements, "furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), A*T&T Technologies*, supra at 650.

With these principles in mind, it is evident that the district court erred in not ordering the parties to arbitrate the union's claim that the actors' agents' firms have violated the contract by breaching their fiduciary duties of loyalty to their union member clients by treating them disparately from their non-union clients.  Specifically, the union alleged in its arbitration complaint that each of the actors' agents' firms "charge non-member performers more than the 10% fee which is the maximum they may charge [union] members, receive fees from employers for the same placement and require such non-[union]member performers to pay for other services as a condition of finding them employment"; that each actors' agent firm has "acknowledged that it was treating member and non-member clients disparately and reiterated its intent to refuse to eliminate such disparate treatment and honor the Regulations"; that "[t]he disparate treatment of member and non-member performers by [the agents' firms] violates the fiduciary duty an agent owes all clients and which is incorporated in

9

the [contract] in that it creates a substantial incentive for each [firm] to seek placement of non-member clients in preference to such [firm's union] member clients and it imposes a discriminatory higher fee on non-member clients"; that "each [firm's] acceptance of compensation from an employer creates a conflict with the agent's duty of loyalty to the performer client"; and that "each of the [firms] has failed and refused to execute an acceptance of [a] 1990 Memorandum of Amendment and thereby to confirm its acceptance of the agreed interpretation of the talent agent's duty of loyalty."

The issues raised by the union's complaint against the actors' agents' firms are clearly within the ambit of the disputes the parties agreed by contract to submit to arbitration. Section IV(H)(6) provides that the agent firm's relationship to the union actor shall be that of a fiduciary, and except as otherwise expressly provided, the firm shall have all the obligations of a trustee as set forth in Sections 2228 through 2239 of the Civil Code of California. Section IV(H)(9) provides that the firm shall owe the duty to the union actor to consider only the interests of the actor in any dealings for the actor, and shall never consider or act upon the interests of the agent when such interests are adverse to the interest of the actor. Section IV(A) provides that every agency contract entered into by an agent firm with any member of the union covering representation in theatrical motion pictures, television motion pictures, and television motion picture commercials shall be in the forms attached and marked "Exhibit E, ""Exhibit G" and "Exhibit I". Each exhibit provides that: (i) the collective bargaining agreement (Rule 16(g) of the Screen Actors Guild, Inc.) "which contains regulations governing the relations of its members to talent agents is hereby referred to and by this reference hereby incorporated herein and made a part of this contract; (ii) both parties agree to be bound by the Regulations and by all of the modifications made thereto pursuant to the Basic Contract; (iii) any controversy under this contract ... or as to the existence, execution or validity thereof or the right of either party to avoid this or any such contract or alleged contract on any grounds or the construction, performance, nonperformance, operation, breach, continuance or termination of this or any such contract shall be submitted to arbitration in accordance with the arbitration provisions in the

10

Regulations or the contract. Exhibit F attached to the contract between the parties provides the rules governing arbitration, including a provision that the "SAG shall be an ex officio party to all arbitration proceedings hereunder in which any member of SAG is involved, and SAG may do anything which a party named in such proceedings might do", and in "arbitrations under Basic Contract Article X the only parties shall be SAG and ATA or NATR." Article X of the Basic Contract between the Screen Actors Guild, Inc. (SAG) and Association of Talent Agents (ATA) and National Association of Talent Representatives, Inc. (NATR) and other franchised talent agents provides that all "disputes and controversies between the SAG and the ATA or NATR with reference to this Basic Contract and its interpretation, or any breach or alleged breach thereof shall be referred to arbitration in accordance with the procedure and with the effect set forth in the regulations."

Consequently, the contract between the parties is susceptible to the interpretation that the agents' alleged violations of their fiduciary duties owed the union actors and the agents' alleged persistent refusal to remove themselves from conflicts between their own financial interests and that of the union actors have created disputes which the parties agreed to submit to arbitration. Furthermore, the several broad arbitration clauses agreed to by the parties create a presumption of arbitrability that has not been rebutted, because there is no forceful evidence of a purpose to exclude these particular claims from arbitration. The fact that the actors' agents' firms refused, after the disputes had arisen, to accept an amendment requiring them to abide by the interpretation of the contract upon which the union's claim is based does not provide any forceful evidence or positive assurance that the contract between the parties does not plausibly call for the submission of such controversies to arbitration. Even if the district court thought the union's underlying claim was frivolous, it was that court's clear duty under the Supreme Court decisions to order the matter submitted to arbitration and to refrain from ruling on the potential merits of the claim.

11