20-461
*Dylan 140 LLC v. Figueroa*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2020

(Argued: October 28, 2020      Decided: December 10, 2020)

No. 20-461-cv

———————————————————

DYLAN 140 LLC

*Plaintiff-Appellant,*

-v.-

HECTOR J. FIGUEROA, AS TRUSTEE AND THE TRUSTEES OF THE BUILDING SERVICE 32BJ
HEALTH FUND, BUILDING SERVICE 32BJ PENSION FUND, THOMAS SHORTMAN TRAINING
SCHOLARSHIP AND SAFETY FUND, BUILDING SERVICE 32BJ LEGAL SERVICES FUND, BUILDING
SERVICES 32BJ SUPPLEMENTAL RETIREMENT & SAVINGS FUND

*Defendants-Appellees.*

———————————————————

Before:      LIVINGSTON, *Chief Judge*, KEARSE and LYNCH, *Circuit Judges*.

Plaintiff Dylan 140 LLC ("Dylan") brought an action in district court seeking a declaration of its rights and obligations under the terms of a collective bargaining agreement ("CBA"). Defendants moved to dismiss, asserting that Dylan was required to resolve the alleged dispute in pending arbitration. The district court agreed, converting the motion to dismiss into a motion to compel arbitration, granting the motion, and dismissing Dylan's complaint without prejudice. On appeal, Dylan argues that the district court misinterpreted the terms of the CBA and erred in dismissing its

1

complaint. We disagree. Accordingly, the judgment of the district court is AFFIRMED.

FOR PLAINTIFF-APPELLANT:            NETANEL NEWBERGER (Joseph M. Labuda, *on the brief*), Milman Labuda Law Group PLLC, Lake Success, New York.

FOR DEFENDANTS-APPELLEES            IRA A. STURM, Raab, Sturm & Ganchrow, LLP, Fort Lee, New Jersey.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Plaintiff-Appellant Dylan 140 LLC ("Dylan") appeals from a January 8, 2020 judgment of the district court compelling arbitration and dismissing Dylan's declaratory judgment action without prejudice. Dylan, the owner and operator of a residential rental apartment building in New York City, is a party to a multi-employer collective bargaining agreement ("CBA") with the Service Employees International Union, Local 32BJ ("Union") and the Realty Advisory Board on Labor Relations ("RAB"). Under the terms of the CBA, Dylan is required to make contributions to employee benefit funds for eligible employees. The core dispute between Dylan and the trustees of the benefit funds (referred to by the parties and herein as the "Funds"), as Defendants-Appellees, is whether Dylan owes money in unpaid contributions for one of Dylan's part-time employees. The district court held that Dylan is required to resolve that dispute in arbitration with the Funds, converting the Funds' motion to dismiss into a motion to

2

compel arbitration, granting that motion, and dismissing Dylan's complaint without prejudice.   For the following reasons, we AFFIRM.

## BACKGROUND

### I.   Factual Background[1]

Dylan is a New York corporation that owns and operates a residential rental apartment building located at 140 West 86th Street, New York, New York.   Dylan is a party to a CBA with the Union that requires it to make monetary contributions to various Funds for eligible employees under the terms of the CBA.   The Funds are jointly administered, multi-employer, labor-management trust funds established by the CBA, that use employer contributions to provide health insurance, pre-paid legal services, training, and other benefits to eligible employees.

In 2018, the Funds, pursuant to a trust agreement incorporated into the CBA, hired a third party to conduct an audit of Dylan's fund contributions.   The audit determined that Dylan owed unpaid contributions for employee Julio Rodriguez.   Rodriguez was a part-time worker at the building, performing Union work as a porter two days a week and non-Union work as a painter three days a week.   In January 2019, the Funds sent a letter notifying Dylan that it owed $110,872.68 in unpaid fund payments.

---

[1]  The factual background presented here is derived from the parties' filings and evidence before the district court in considering the converted motion to compel arbitration. "App'x" refers to the joint appendix, Dkt. No. 58.

## II. Procedural History

In April 2019, Dylan brought an action in the Southern District of New York seeking declaratory relief under the Employment Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA") (also known as the "Taft-Hartley Act") in the effect of a declaration that it was not required to pay benefit fund contributions for Rodriguez. Dylan claimed that while the CBA requires it to contribute to the Funds for certain employees—those who work more than two days a week or twenty hours in a Union job—it was not required to make those contributions for Rodriguez, who worked only two days per week for sixteen hours total in a Union job, and thus was not covered by the CBA.

The Funds moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to stay court proceedings pending the resolution of arbitration, in addition to "any other relief . . . deemed appropriate." The Funds had already commenced arbitration almost a month prior to the time that Dylan filed its declaratory judgment action. The parties dispute whether the Funds sent adequate notice to Dylan of its intention to arbitrate. Regardless, Dylan concedes that it did ultimately receive the Funds' amended notice sent on April 5, 2019, four days after Dylan filed its declaratory judgment action in court.

The Funds argued before the district court that because they had initiated arbitration proceedings against Dylan, Dylan was required to arbitrate. The Funds

4

pointed to two provisions of the CBA that they claimed supported this requirement. The first provision, Article X, Section F, Paragraph 1, provides that the Funds may, as third-party beneficiaries of the CBA, bring either legal action or initiate arbitration if Dylan fails to make required payments to the funds. The second provision, Article VI, Paragraph 1, states that an arbitrator has "the power to decide all differences arising between the parties to [the CBA] . . . including such issues as may be initiated by the Trustees of the Funds." App'x at 68. Read together, Dylan—as a party to the CBA—was required to arbitrate where, as here, the Funds had initiated arbitration.

Dylan disputed the Funds' reading of the CBA, claiming that it was only required, under Article VI, to arbitrate disputes arising "*between the parties*" to the CBA. App'x at 68 (emphasis added). Only Dylan, the Union, and the RAB were parties to the CBA. Moreover, because Article X of the CBA permits the Funds to bring either arbitration proceedings or suits in court, "the same must be true for Dylan." App'x at 41. Therefore, Dylan argued that it had a right to have its case heard in court.

On review of the parties' claims, Magistrate Judge Freeman issued a Report and Recommendation to the district court, recommending that the court convert the Funds' motion to dismiss into a motion to compel arbitration and dismiss Dylan's declaratory judgment action without prejudice. Examining the terms of the CBA, the magistrate judge stated that the Funds, as third-party beneficiaries to the agreement, were clearly authorized to pursue arbitration against Dylan under Article X of the CBA. The

5

magistrate judge further concluded that Article VI of the CBA, which requires parties to the CBA to arbitrate "all differences [arising] between the parties," made an "implicit reference" to Article X by its language that an arbitrator also has the power to decide "such issues as may be initiated by the [Funds]." App'x at 243–44 (citing App'x at 68). Taken together, Article VI and X provided that when the Funds chose to arbitrate a dispute with Dylan over unpaid benefit fund contributions, Dylan was obligated to arbitrate.

The district court adopted the magistrate judge's recommendations, converting the Funds' motion to dismiss into a motion to compel arbitration, granting that motion, and dismissing the action without prejudice. This appeal followed.

## DISCUSSION

At the start, the Funds assert that the district court should have dismissed Dylan's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. We disagree, addressing the issue only briefly to clarify that the court did have federal question jurisdiction. The Funds confuse whether the district court had subject matter jurisdiction with whether Dylan stated a proper cause of action in its complaint, but "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). "Federal question jurisdiction exists whenever the complaint states a cause of action under federal law that is neither 'clearly . . . immaterial and made solely for the

6

purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous.'" *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 701 (2d Cir. 2000) (quoting *Bell*, 327 U.S. at 682-83). Here, Dylan's complaint asserts federal question jurisdiction arising under, *inter alia*, Section 301 of the LMRA, 29 U.S.C. § 185. This claim is neither insubstantial nor frivolous. *See, e.g., Painting Co. v. Dist. Council No. 9, Int'l Union of Painters & Allied Trades, A.F.L.*, 2008 WL 4449262, at *8 (S.D. Ohio Sept. 30, 2008)) ("The Funds argue that because they are not a party to the [CBA], but only third-party beneficiaries, jurisdiction is not appropriate under the LMRA. This argument is not supported by law. . . . 'Section 301 jurisdiction is not dependent upon the parties to the suit but rather the nature or subject matter of the action. Jurisdiction exists as long as the suit is for violation of a contract between a union and employer even if neither party is a union or an employer.'" (quoting *Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 457 (6th Cir. 1992))); *A.S.C. Contracting Corp. v. Local Union 175 Welfare Fund*, 2010 WL 11627432, at *3 (E.D.N.Y. May 14, 2010) ("'Suits for violation of contracts' include cases, like this one, in which an employer is accused of having violated the terms of a collective bargaining agreement and seeks a declaration from the court that it has not." (quoting 29 U.S.C. § 185(a))); *see also Michels Corp. v. Cent. States, Se., & Sw. Areas Pension Fund*, 800 F.3d 411, 415 (7th Cir. 2015). Accordingly, the district court had jurisdiction to decide whether Dylan was entitled to the declaratory relief requested, and we in turn have jurisdiction to review the resulting judgment.

7

Turning to the merits, this Court "review[s] *de novo* [a] district court's decision that [a] dispute must be arbitrated under the terms of [a] CBA." *Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Local 812 Int'l Bhd. of Teamsters*, 242 F.3d 52, 56 (2d Cir. 2001). Dylan argues that it is entitled to bring a declaratory judgment action in federal court under the CBA's terms. But we need not address whether Dylan is ever entitled, under the terms of the CBA, to bring an action against the Funds in court. Rather, the question at issue here is whether Dylan is required to proceed in arbitration when the Funds have initiated arbitration proceedings. We conclude that Dylan is required to arbitrate in the circumstances here, and accordingly affirm the decision of the district court.

## I

Courts are tasked with "determining whether the reluctant party has breached his promise to arbitrate" under the terms of a CBA. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). While typically "there is a presumption of arbitrability of disputes arising out of a collective bargaining agreement," *Mic-Ron Gen. Contractors, Inc. v. Trustees of New York City Dist. Council of Carpenters Ben. Funds*, 908 F. Supp. 208, 211 (S.D.N.Y. 1995) (citing *United Steelworkers of Am.*, 363 U.S. at 582), that presumption "does not apply where a benefit fund (or its trustees) asserts its interests as third party beneficiary to the collective bargaining agreement," *id.* at 212 (citing *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 367 (1984)). "Without the presumption of

8

arbitrability," the Court is required to look to the CBA for evidence of intent "on the part of the parties to require arbitration of disputes between the trustees and the employers." *Robbins*, 466 U.S. at 372. We agree with the district court that the CBA here evidences such an intent.

Article X of the CBA states that:

> If the Employer fails to make required reports or payments to the Funds, *the Trustees may in their sole and absolute discretion* take any action necessary, *including but not limited to immediate arbitration and suits at law*, to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' trust agreements, and any and all expenses of collection, including but not limited to counsel fees, arbitration costs, fees and court costs.

App'x at 82 (emphasis added). Article X thus expressly provides that the Funds may choose, in their sole and absolute discretion, to arbitrate if Dylan fails to make required payments.

Article VI of the CBA in turn addresses Dylan's obligation to arbitrate. It states that,

> A Contract Arbitrator shall have the power to decide all differences arising *between the parties to this Agreement* as to interpretation, application or performance of any part of this Agreement, *and such other issues as are expressly required to be arbitrated before the Arbitrator, including such issues as may be initiated by the Trustees of the Funds.*

App'x at 68 (emphasis added). Article VI also provides that "[t]he procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction shall be the sole and exclusive method for the determination of all such issues." *Id.*

9

Read together, these provisions of the CBA require Dylan to arbitrate disputes regarding benefit fund contributions if and when the Trustees of the Funds choose to initiate arbitration against it. Once the Funds initiate arbitration (provided the Funds have not waived the contractual entitlement to arbitration by consenting to litigate in court) Dylan must arbitrate.

Dylan asserts that, regardless of these provisions of the CBA, it should not be required to arbitrate because it filed its declaratory judgment action in court prior to the Funds' initiation of arbitration. We disagree. Dylan cites no support for the contention that a "first-to-file" rule has any application in the context of simultaneous litigation and arbitration disputes. And even if a provision in the CBA *did* support Dylan's position, it would be irrelevant in this case where the Funds did, in fact, file a notice of arbitration first. The Funds initiated arbitration against Dylan on or around March 5, 2019, almost a month before Dylan initiated its declaratory judgment action, sending a "Notice of Intention to Arbitrate Fund Delinquency" to "NYC Management LLC" at 381 Park Avenue South, 15th Floor, New York, NY 10016. App'x at 131. "NYC Management" is Dylan's agent, and Dylan listed "NYC Management" and NYC Management's address above its signature on the form in which it assented to the CBA, not including any separate contact information for itself. To the extent that Dylan argues that addressing the notice to NYC Management did not make clear that the dispute was against Dylan, moreover, the notice states that the dispute is in regard to a building at address "140 West

10

86th Street"—the address of the building Dylan owns and operates—and the notice clearly lays out that the dispute is over unpaid contributions in the precise amount that Dylan then references in its own declaratory judgment action.

Regardless, the Funds then corrected the alleged error, sending a second notice a few days after Dylan filed its declaratory judgment action, this time explicitly addressed to "Dylan 140 LLC." Dylan asserts that this is the operative notice, and that it provides no basis for compelling arbitration because it came after the declaratory judgment action had been filed. Again, however, nothing in the CBA suggests that the Funds must initiate arbitration prior to the employer's commencement of litigation on pain of losing the ability to require arbitration. And Dylan does not (and cannot) argue that the Funds subsequently waived the right to arbitrate by consenting to litigation. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995). Such waiver has not occurred. Thus, because the Funds have adequately initiated arbitration, regardless of timing, Dylan is required to arbitrate by the terms of the CBA.

## II

We address one final issue. After holding that Dylan was required to arbitrate with the Funds, the district court, based on the recommendation of the magistrate judge, converted the Funds' motion to dismiss into a motion to compel arbitration and dismissed Dylan's declaratory judgment action without prejudice. The magistrate judge recommended this course of action by examining whether conversion of the motion

11

and dismissal of the action would be appropriate under the Federal Arbitration Act ("FAA"). Neither party challenges the court's application of the FAA on appeal, but we briefly take this opportunity to reiterate that the FAA does not directly apply to "cases brought under Section 301 of the [Taft-Hartley Act]," *Coca-Cola Bottling Co. of New York*, 242 F.3d at 53, 54 (holding that an action "under Section 301 . . . is . . . based on a body of federal law analytically distinct from the FAA"); *see also Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 221–22 (2d Cir. 2002); *United Steelworkers of Am.*, 363 U.S. at 582–83. The district court nonetheless did not err in turning to the FAA for guidance in this case, where "the express provisions of the national labor laws" and "the basic policies underlying these law[s]," *Livingston v. John Wiley & Sons, Inc.*, 313 F.2d 52, 55 (2d Cir. 1963), do not address whether it is proper to convert a motion to dismiss into a motion to compel arbitration or whether it is proper to dismiss rather than stay litigation pending arbitration.[2] *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40 n.9

---

[2] In addition to the FAA, courts may also turn to state law for guidance in such situations, if state law is "compatible with the purpose of Section 301" and "accepted principles of traditional contract law." *Livingston*, 313 F.2d at 55 (internal quotation marks omitted) (quoting *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 457 (1957)). The magistrate judge noted in her recommendation and report that Dylan assumed, and the Funds did not dispute, that New York state law should govern the district court's interpretation of the CBA. New York state law is consistent with the district court's conclusion under the FAA that it was proper, in these circumstances, to convert the Funds' motion to dismiss into a motion to compel arbitration. *See Birchwood Vill. LP v. Assessor of City of Kingston*, 94 A.D.3d 1374, 1376, 943 N.Y.S. 2d 258, 260 (3d Dep't 2012) (noting that where "respondents' motion sought, in addition to dismissal, such other relief as the court deemed just and proper, the court could

(1987) ("[T]he federal courts have often looked to the [Federal Arbitration] Act for guidance in labor arbitration cases").  We agree, then, with the district court's analysis that it was proper in this case to compel arbitration and dismiss Dylan's complaint without prejudice.

*     *     *

We have considered Plaintiff-Appellant's remaining arguments and find them to be without merit.  For the foregoing reasons, we AFFIRM the judgment of the district court.

---

consider an appropriate remedy, namely whether to compel arbitration.").  However, while the FAA permits courts to dismiss rather than stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration, *see Benzemann v. Citibank, N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015), the New York Civil Practice Law and Rules ("CPLR") directs a different conclusion.  Under the New York CPLR, the *only* permissible remedy is to "stay the judicial action rather than dismiss it."  *Piller v. Tribeca Dev. Grp. LLC*, 156 A.D.3d 1257, 1260, 69 N.Y.S. 3d 120, 122–23 (3d Dep't 2017) (citing N.Y. CPLR § 7503(a)).  Regardless, any tension between the FAA and state law here was appropriately resolved in favor of the FAA.  Although we traditionally counsel that courts should stay litigation pending arbitration to avoid "convert[ing] an otherwise-unappealable interlocutory stay order into an appealable final dismissal order," thus "enabl[ing] parties to proceed to arbitration directly," *Katz v. Cellco P'Ship*, 794 F.3d 341, 345, 346 (2d Cir. 2015), the FAA's bar on the appeal of interlocutory stay orders does not apply to actions brought under Section 301 of the LMRA.  *See Coca-Cola Bottling Co. of New York*, 242 F.3d at 54, 56 (holding that, even though the FAA prohibits appeals of interlocutory orders, this Court had jurisdiction over the district court's order because "Coca-Cola's action invoked our federal question jurisdiction under Section 301.").  Dismissal of Dylan's complaint was therefore appropriate to promote "efficient docket management." *Katz*, 794 F.3d at 346.